## No. 968.

### M. LEVY VS. V. A. WARD, ADMINISTRATRIX.

A contract, by which a plantation is sold for the sum of $2000, which the vendee agrees to advance in yearly instalments to the vendor, for the cultivation of the property sold, with a stipulation by which the vendee promises to reconvey the plantation to the vendor, on re-imbursement of the money advanced and interest—such a contract is not one of hypothecary or pignorative security; but it is a regular sale with the right of redemption, the title of which is only defeasible by the exercise of the said right of redemption.

APPEAL from the Sixth Judicial District Court, parish of Morehouse. *Vaughan*, Judge *ad hoc.*

Newton & Hall for Plaintiff and Appellee.

Bussey & Naff and Boatner & Liddell for Defendant and Appellant:

If, at the time of the sale, the contract was wanting in any of the requisites of a real sale, these defects cannot be cured or remedied by any subsequent verbal agreement or transaction between the parties.

When the thing sold remains in the possession of the seller, the law raises the presumption of simulation; and the buyer must remove the presumption. 30 An. 968; 28 An. 357; 23 An. 666; 19 An. 53; 15 An. 555; 5 An. 99; 1 An. 132.

A simulated title gives neither possession nor title; and no act of the parties thereto can affect the rights of creditors.

Documents, in the form of a sale, shown by a counter-letter to have been made without such intention, cannot serve as a sale. 5 An. 99; 10 An. 691; 23 An. 658, 666; 28 An. 357; 31 An. 348.

The administratrix represents the creditors.

The prescription of one year does not apply to a simulated sale.

---

The opinion of the Court was delivered by

FENNER, J. On November 15th, 1873, George C. Ward executed an

act of sale by the terms of which, in consideration of the price of $2000,
receipt of which is acknowledged, he conveyed his plantation to M.
Levy, plaintiff in this suit. Said deed contained the following pact : "It
is specially understood, between said parties, that, in case the said Ward,
or his heirs, should, at any time hereafter, pay said Levy or his heirs
the amount he paid for said land, together with eight per cent per annum
interest thereon, from January 1st, 1874, said Levy, his heirs, or assigns
are to make him, said Ward, or his heirs, a title to said land, and re-
linquish any claim thereon."

On the same day the parties, Ward and Levy, executed two other
agreements or counter-letters, both of which are found in the record.
One of these counter-letters is in the following words : "Be it known
that on this 15th day of November, 1873, the following contract and
agreement was entered into between Geo. C. Ward and Michel Levy, to
wit : Said Levy has this day agreed to forward and advance to said
Geo. C. Ward necessary supplies to enable him to cultivate his planta-
tion situated in this parish, for the year 1874, and for a further length of
time, if said Ward should desire it, to an amount not to exceed one
thousand dollars any year, together with dry goods, stock, and other
necessaries, which amounts are to be shown by M. Levy's books. And
the said Ward has, this day, in order to secure the said Levy in the pay-
ment of any amounts he may advance him, transferred to said Levy his
plantation in this parish, with the understanding and agreement that
he, said Ward, is to stay on said plantation and cultivate the same free
of any rents, and with the further understanding that he is to have the
privilege to redeem said land, by paying said Levy the amount advanced
him, at any time. It is further understood that said Ward is to have
the privilege to rent said plantation if he should desire it. It is further
understood that said Levy is to ship the cotton raised by said Ward
each year, and that they are to have a settlement showing how they
stand financially on or about the 15th of April annually. It is further
understood the consideration in said act of sale is two thousand dollars,
which in fact has not yet been paid, but is to be paid in said advances as
aforesaid, advanced this year, and to be advanced hereafter."

The foregoing is signed by both parties, in presence of two subscrib-
ing witnesses, and is verified by the affidavit of one of said witnesses
made on the day of its date, and was, on the same day, duly recorded,
as appears from the certificate of the recorder, indorsed thereon.

The other agreement or counter-letter, though differing in some
respects from the foregoing, we do not deem it necessary to copy, for
the following reasons : Mr. Levy testifies, and the counsel for defend-
ant does not contest, but substantially admits, the truth of his state-
ment, that *one* of the counter-letters was annulled, after being signed,

and the other was drawn as a substitute for it. The question as to *which* of the two was canceled and which remained in force is not clearly stated in the record. We are satisfied that the one copied by us above is the one last drawn, and which remained in effect, for the following reasons, viz.:

First. It is much more carefully and correctly drawn and expressed than the other.

Second. It contains the verifying affidavit of one of the subscribing witnesses, which the other lacks.

Third. It was the one actually recorded and left of record from the 15th of November, 1873, until the 10th of January following, when the record was annulled.

These circumstances produce the conclusive impression on our minds that this recorded counter-letter was the last one drawn, and the one which embodied the final agreement of the parties ; and although both the originals remained extant and were offered in evidence by the defendant in this case, we shall treat the one recorded, and which we have copied herein, as the only one entitled to consideration.

To proceed with the history of the transaction : Levy proceeded to make advances to Ward in accordance with their understanding, and the evidence establishes that sundry settlements were had as stipulated, from which it appears that at the date of the sale (covered by the phrase in the counter-letter, " advanced this year and to be advanced hereafter") Ward owed Levy $815 91 ; on April 16th, 1874, he owed him $1153 17 ; on May 10th, 1875, $1595 99 ; on April 15th, 1876, $1985 73 ; on March 16th, 1877, $2291 57, or $291 .57 more than the whole price which was to be paid in these advances ; and on December 14th, 1877, the date of Ward's death, $3167 62, or $1167 62 over and above the stipulated price.

Ward remained in possession of the plantation, as stipulated in the counter-letter, rent free, until 1876, when the balance due Levy on the settlement of that year being nearly equal to the entire price due under the sale, it appears that an informal lease was made by Levy to Ward of the plantation at a rent of four dollars per acre for the cultivated portion, about ninety acres, for which a sort of note or due-bill was given by Ward. At the same time, an incomprehensible agreement was executed by Levy, in the following words :  " I, Michel Levy, agrees for the rent of the land for the year 1876, when collected, to be placed to the credit on note or account of G. C. Ward, if there is any amount over and above of the nett proceeds of cotton when shipped for my account after paying for provisions furnished and dry goods to be placed credit on said Ward note."

We have struggled in vain to determine satisfactorily the meaning

of this enigmatical utterance ; but it seems of little consequence, since, in the following year, 1877, the parties entered into a formal contract of lease, by the terms of which it is stipulated that " the said Levy hereby leases unto said Ward his plantation known as the Ward place, being the same place which the said Levy purchased from me on the 15th November, 1873, etc.;" and further on, that " said Ward agrees to take good care of said plantation, and the buildings and improvements, and to deliver the same in like good order and condition at expiration of lease to said Levy," etc. The rent is fixed at $349 06, for which Ward gave his rent-note ; and there is no pretense of any outstanding agreement, verbal or written, to impugn the reality of this transaction. On the 14th of December, 1877, during the pendency of this lease, and while holding thereunder, Ward died.

His administratrix caused the plantation to be inventoried as part of his estate ; subsequently obtained from the probate court an order for the sale thereof, and advertised the same for sale, when her further proceedings were arrested by the injunction issued in this suit.

Plaintiff, in his petition herein, sets forth his title and ownership of the property, the lease thereof to Ward, the alleged illegal detention of the property by the administratrix, her proceedings for its sale, with other appropriate allegations to sustain his claim for injunction; and asks a judgment perpetuating the injunction, decreeing him to be the owner of the property, putting him in possession thereof, and for further judgment for rent at the rate of $500 per annum from 1st January, 1878, the date of expiration of the lease to Ward, until his restoration to possession.

Defendant answered, denying the ownership of plaintiff, averring that the sale from Ward to plaintiff was a pure simulation ; that it was given in fraud of creditors ; that if plaintiff acquired any rights under the deed, those rights were hypothecary in their nature, and only intended to secure payment of advances made ; that the property remained the property of Ward and of his succession, and should be sold in settlement of the latter ; and prayed for judgment dissolving the injunction, decreeing the property to belong to the succession, and for damages against the plaintiff.

Upon these issues and on evidence substantially establishing the facts hereinbefore stated, the lower court gave judgment in favor of plaintiff substantially as prayed for, except as to his demand for rent, which was rejected. From this judgment defendant has appealed.

The view we have taken of the case dispenses us from the necessity of passing upon the numerous bills of exceptions taken by either party to the record.

The deed from Ward to Levy is a perfect and complete sale with

the right of redemption. All the elements essential to constitute a sale concur therein, the thing sold, the price, the consent. The right of redemption is stipulated in strict accord with art. 2567 of the Code.

The counter-letter, properly construed, taken as part of the entire contract, does not rob it of any of these essential elements, but, on the contrary, confirms and establishes the existence of every one of them.

1. As to the *thing* and the *consent*, the counter-letter affirms anew that Ward has " transferred to said Levy his plantation in this parish," thus ratifying the consent, and again identifying the thing.

2. As to the *price,* the counter-letter distinctly states that " the consideration in said act of sale is two thousand dollars, which in fact has not yet been paid, but *is to be paid* in said advances as aforesaid ad-vanced this year, and to be advanced hereafter." This absolutely bound Levy to pay the price in the manner stipulated.

3. As to the right of redemption, it is repeated in the counter-letter substantially as set forth in the deed, by the following language : " He (Ward) is to have the privilege to redeem said land by paying said Levy the amount advanced him, at any time "—which language, taken in connection with the fact that the price was to be paid in "advances," is equivalent to a reservation of the right to redeem on paying to Levy the *price,* or such portion thereof as might have been paid ; with, no doubt, the added requirement to pay back any excess of advances over the whole price. That there should ever exist any such *excess* doubtless did not enter into the contemplation of the parties at that time ; but we can see no objection to a vendor with right of redemption thus qualifying his right and enlarging his obligation if he chooses so to do.

The features of the counter-letter above referred to distinctly differentiate this case from all of those referred to by the counsel for defendant and carefully examined by us, in which it has been held that contracts in the form of sales, but where it appears in the stipulations of the deed or from contemporary counter-letters that no sale or other contract translative of property was intended by the parties, that no price was paid or intended or required to be paid, and that the title was passed to the transferree, not as owner, but solely as security for debt, did not operate to confer ownership on the transferree, but merely gave him a hypothecary right on the property.

Here, on the contrary, it distinctly appears from the counter-letter itself, that a real sale was intended, conferring upon the vendee a real ownership, defeasible only by the exercise of the right of redemption reserved to the vendor, in accordance with the the terms thereof, and that there was a real price, which the vendee was bound to pay in the manner stipulated, if required by the vendor.

No doubt the counter-letter does establish that the motive of the

transaction was to enable Ward to continue the cultivation of the place, and to supply him with funds for that purpose, with the expectation that the results of the cultivation would enable him to repay the money advanced by Levy out of the proceeds of crops raised. If this expectation had proved well founded, and if the crop of any year had repaid all the advances previously made by Levy, the effect would have been that no part of the price would have been paid by Levy, and that Ward would have been free to re-enter into the property and require a reconveyance under his equity of redemption, without having any thing to repay to Levy. But when the crops raised fell short of repaying the advances made, the surplus unquestionably was attributable as a credit on the price due by Levy under the very terms of the counter-letter. Levy was bound to continue the advances until the surplus thereof, over and above the proceeds of crops, equaled two thousand dollars, which would have operated a complete payment of the price. He would not have been bound to make further advances, and having then paid the whole price of the sale, would have been entitled to take possession of the property, subject still, of course, to Ward's right of redemption.

The execution of the contract by the parties fully confirms this construction. Levy made advances as he had agreed to do. As long as the surplus of advances over proceeds of crops was less than $2000, the agreed price, he left Ward in possession, rent-free, as stipulated, and did not interfere with his administration of the property. But when in 1877 the surplus of advances exceeded $2000, thus operating full payment of the entire price, we find that the parties enter into a formal contract of lease at a fixed rent, by which Ward recognizes Levy's full ownership and right of possession, accepts tenancy under him, and obligates himself " to take care of said plantation, and to deliver the same in like good order and condition at the expiration of the lease to said Levy," etc.

There is absolutely nothing in the record impugning or tending to impugn the reality of this lease. We consider it as furnishing the authoritative construction placed by the parties themselves on their former contract, establishing and acknowledging Levy's ownership and right of possession of the property in such manner that neither Ward nor his legal representative can question it.

Although we have critically examined the whole jurisprudence on the subject of contracts of this kind, the conclusions reached by us as to the facts in this case dispense us from the necessity of reviewing them. We simply say that here there was a real contract, a real price, and that the absolute and unconditional obligation of the vendee to pay the price appears as well in the counter-letter as in the deed. This Court has never, in any case, held that where the absolute obligation for the price subsists, the co-relative right can be less than a right of ownership.

The ownership thus translated may be intended or expected, in the contemplation of the parties, to have, in some sense, a pignorative or hypothecary effect, but it is nevertheless an ownership, defeasible only by redemption under the stipulations of the contract.

The view we have taken establishes that the contract was, in no sense, simulated. We do not think it was subject to attack as being in fraud of creditors, Ward not being shown to have been insolvent at the time the contract was entered into ; but, on the contrary, the price due by Levy being greater than all his debts. Besides, the only creditor of Ward's succession is E. J. Hope, and as to him the revocatory action is barred.

So far as the necessitous wife's claim is concerned, that only originated at the husband's death, and does not give her the right to the revocatory action as to antecedent contracts.

We think Levy's right to possession was absolute from the first of January, 1878, and he is entitled to rent from that date ; but we do not think the evidence establishes, with sufficient clearness, the amount of the rent, or who has occupied the premises, the petition alleging that the administratrix and other persons were in possession of the property. Under the amendment prayed for by appellee's counsel, we shall change the judgment as to the rent to one of nonsuit.

The question as to whether a right of redemption remains in the succession of Ward is not presented here, and the rights of the succession will not be prejudiced by the decree herein.

It is therefore ordered, adjudged, and decreed that the judgment herein appealed from be amended so far as the same rejects the claim of plaintiff for rent, and that said claim for rent be only dismissed as in case of nonsuit, and that in all other respects said judgment be affirmed, defendant and appellant paying costs in both courts.

Mr. Justice Todd is recused in this case, having been of counsel.