## No. 13,681.

### ALEXANDER C. HUTCHINSON VS. HENRY RICE ET AL.

#### SYLLABUS.

1. One, who, without interest as creditor, co-debtor, or heir, pays the mortgage note of another acquires no subrogation to the rights of the creditor unless it be expressed, and made at the same time as the payment. He has a claim for reimbursement against the party for whose benefit the payment was made, but only as ordinary creditor.

2. The pledgee of mortgage notes, receiving same after their maturity, may claim no greater rights than the pledgor had, certainly so far as the mortgage securing the notes is concerned.

3. While Art. 2160 of the Code declares that a debtor, borrowing a sum of money to pay his debts, may, by public notarial act, subrogate the lender to the rights of the creditor, and that this subrogation takes place independently of the creditor, the recital is controlled by Art. 2162, which, in effect, provides that in case of a subrogation made by the debtor, the creditor may exercise his right for what remains due him in preference to the debtor's subrogee.

A PPEAL from the Civil District Court, Parish of Orleans— *King, J.*

*Denegre, Blair & Denegre* and *Andrew Hero,* for Plaintiff, Appellee.

---

*Dart & Kernan* for Louis Mathis, Defendant in Rule, Appellant.

---

*Dinkelspiel & Hart* (*Edward Dinkelspiel,* of counsel), for Metropolitan Bank, Defendant in Rule, Appellant.

---

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff was the holder of four notes, each for $13,500, and of one for $1620, executed by Henry Rice to his own order and by him endorsed.

These notes were secured by special mortgage which Rice had con sented to in favor of the plaintiff, resting on certain property owned by Rice.

They were the last of a series of notes secured by the mortgage. All of the series had been held by the plaintiff, and those to first mature had been taken up, as they fell due, *by payment,* as plaintiff thought and believed.

The last of the series (those first above referred to) not being met at maturity, plaintiff sued out executory process in foreclosure of the mortgage.

At the sale which followed, he became the purchaser of the mortgaged property for a sum less than the aggregate of the notes sued on.

It appearing that there had been no cancellation of the mortgage as to the earlier notes which he had parted with on the supposition of their payment, and that one of said notes for $1000 was claimed to be held by Louis Mathis, and ten of same, aggregating $10,620, were claimed to be held by the Metropolitan Bank, and that these respective holders asserted mortgage rights on the proceeds of the sale, plaintiff took a rule on all parties in interest to show cause why the mortgage as to the notes referred to should not be declared extinguished and its inscription erased from the mortgage records, and also why a tax lien for the State taxes of 1898, on the property, said to be asserted by the Metropolitan Bank, should not be declared of no avail as against the seizing creditor and purchaser.

The bank answered claiming to hold the notes in its possession under pledge executed by Henry Rice & Son, a commercial firm, to secure an indebtedness due it by the firm for advances of money made. In other words, the bank held the notes as collateral to secure overdrafts and bills payable to it by the firm of Henry Rice & Son. A written act of pledge of the notes to the bank, it seems, was made by the firm.

Its contention is the notes were never paid, but, on the contrary, were merely taken up by the firm of Henry Rice & Son and subsequently pledged to it, without notice or knowledge on its part that they were otherwise than valid, subsisting obligations secured by mortgage.

The contention of Mathis is that he loaned Henry Rice the money to take up out of the hands of the plaintiff the note he holds; that the identical money he supplied was used for the purpose; that at the time, he and Rice appeared before a notary public and Rice executed to him and in his favor an act of conventional subrogation of all the rights in

and to the note and mortgage securing it which the then holder (plaintiff herein) had; and that this public act of subrogation makes all the recitals and declarations required by clause 2 of Article 2160 of the Civil Code.

Both the bank and Mathis claim to share *pro rata* in the proceeds of the sale of the mortgage property.

The judgment of the trial court sustained the plaintiff's rule, made the same absolute, ordered the cancellation of the mortgage to the extent of the notes held by the bank and the one held by Mathis, denied to both any participation in the proceeds of the sale, and denied to the bank any lien on the property for taxes paid.

This appeal by the bank and by Mathis followed.

*Ruling*—The evidence shows the notes which the Metropolitan Bank holds were paid at their maturity, and were acquired by the bank afterwards.

As the notes fell due, Philip Rice, who was the junior member of the firm of Henry Rice & Son, appeared at the plaintiff's place of business and paid them to parties there who had been designated by plaintiff, in his absence, to receive the money.

These agents of the plaintiff had no other thought than that they were receiving *payment* of the notes. There was no intention or purpose whatever, on their part, to sell or transfer them to Phil Rice, or to the firm of Henry Rice & Son.

The firm's checks were given in payment of the notes, which required no endorsement of the plaintiff (the holder), since they were not payable to his order, but that of their maker, Henry Rice, who had endorsed them in blank at the time the mortgage was executed. So, when the money was forthcoming to meet the notes, the parties acting for plaintiff merely handed the notes over to Phil Rice.

No word whatever was said between them and him that the notes were not being paid, but taken up by those interested in keeping them alive as outstanding obligations. There was nothing said or done to indicate that the transaction was otherwise than as they considered it—*a payment*. Phil Rice intimated in no way that he was not paying the notes, but buying them for his firm.

He, the evidence shows, had authority from his father, the maker of the notes and the head of the firm, to handle the financial affairs of the firm.

His authority to pay the notes with the firm's money undoubtedly existed. That he did so, the evidence satisfies us.

If he intended not *to pay* the notes for his father, but *to buy* them for his firm, he should have so notified plaintiff's agents.

Had he done this, those acting for plaintiff would not have received his money and surrendered to him the notes, or else, receiving it, would have endorsed on the notes their subordination, so far as the mortgage was concerned, to the remaining notes held by plaintiff.

There was here no conventional transfer and subrogation. Such subrogation occurs, declares C. C. 2160, "when the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment."

Subrogation to a creditor's rights and liens only takes place in favor of a third person who pays the debt (if such third person has no interest in paying it) by an express agreement to that effect entered into at the time of payment.

Brice vs. Watkins, 30 La. Ann. 21; Hoyle vs. Cazabat, 25 La. Ann. 438; Fishel vs. Mercier, 37 La. Ann. 359.

Hence, "payment of a note secured by mortgage by one not bound for it, and who had no interest in discharging it, will not subrogate him to the rights of the party to whom he paid. The payment will extinguish the debt and the mortgage given to secure it; and the claim for reimbursement will constitute the party who paid an ordinary creditor of him for whose benefit the payment was made."

Nicholls vs. His Creditors, 9 R. 476; Wiel vs. Ginnery Co., 42 La. Ann. 493.

So, too, there was here no legal subrogation. The firm of Henry Rice & Son are not shown to have been creditors of Henry Rice and, therefore, as such having an interest to take up the latter's outstanding mortgage liabilities. Neither were they co-debtors of the debt and, thus, interested in discharging it. C. C. 2161; Bank vs. Compress Co., 43 La. Ann. 841; Zeigler vs. His Creditors, 49 La. Ann. 145.

The Metropolitan Bank, receiving the notes from Henry Rice & Son, *after maturity,* can claim no greater rights than the firm itself had, certainly so far as the mortgage securing the notes is concerned. And we hold that Henry Rice & Son did not buy the notes of plaintiff; the latter did not sell to him. The transfer was a payment, and Rice &

Son and their pledgee, the bank, can make nothing else out of it against the will and to the detriment of the plaintiff.

It was not the case of notes being held as collateral security merely, where upon payment of the original debt the collateral would pass unimpaired to the debtor, to be validly reissued by him under some circumstances. Levy vs. Ford, 41 La. Ann. 873.

As to the State taxes for the year 1898, the bank in its answer sets up no claim on account of taxes paid by it. It does not ask to be recognized as subrogated to the State's lien on the property.

Besides, the evidence shows that the receiver appointed to the insolvent firm of Henry Rice & Son secured an order from the court directing him to pay these taxes. He obtained the money from the bank for the purpose, or got the bank to pay the taxes, and issued to the bank his receiver's certificate covering the amount, with 8 per cent. interest. He then applied to the court for its approval of the certificate as a debt of the receivership, to be paid in due course of administration, and the court granted the order.

This was a year before the purchase of the property by the plaintiff, and during this time the bank asserted no privilege on the property for taxes paid. It seems to have been content to look to the receiver's certificate for reimbursement. It filed no third opposition claiming to be paid by preference over plaintiff the amount of the taxes it had paid, and it does not appear that the bank took any subrogation from the tax collector, on payment of the taxes, as seems to be contemplated by Sec. 88 of Act 85 of 1888, and Sec. 89 of Act 170 of 1898.

Again, as we have seen, the bank did not occupy the position of holder of mortgage securities affecting the property on which it paid taxes, and can not, therefore, claim legal subrogation on that ground.

The same is true of Henry Rice & Son, whose receiver took the action above referred to for payment of the taxes of 1898.

On the whole, we do not think the tax lien made out, even if the bank had claimed benefit of same.

As to the mortgage note held by Louis Mathis, it appears a notarial act of subrogation was made to him by Henry Rice pursuant to the 2nd clause of C. C. 2160.

The plaintiff, holder of the note at the time, was no party to this act, and while the Code declares (Art. 2160) such subrogation takes place independently of the will of the creditor, this recital is controlled by Art. 2162, which, in effect, provides that in case of a subrogation

made only by the debtor, the creditor may exercise his right for what remains due in preference to the debtor's subrogee.

See Hoyle vs. Cazabat, 25 La. Ann. 438.

Judgment affirmed.

Provosty, J., takes no part.