I respectfully dissent from the ruling dismissing this appeal.

(135 So. 235)

## FIRST NAT. BANK OF ATLANTA, TEX., v. THOMAS et al.

Jan. 5, 1931.

On Rehearing, May 25, 1931.

John B. Files and W. A. Mabry, both of Shreveport, for appellant.

Lyons & Prentiss, of Shreveport, for appellees.

BRUNOT, J.

This case was before us, on appeal, in 1929. It is reported in 168 La. 481, 122 So. 589. The case is stated in that opinion and it is not necessary to restate it here.

On the first appeal all of the issues were disposed of except one of fact, upon proof of which the proper decision of the case hinged. On the first trial the lower court excluded proof of the character of defendants' possession of the property after the expiration of the redemptive period fixed in the deed of sale. In our opinion, this ruling was erroneous, and we remanded the case for the admission of proof of that fact. On the second trial the said excluded proof was admitted, the trial judge adhered to his original opinion, and plaintiff has again appealed.

At the outset we will say that upon defendants' failure to redeem the property during or at the termination of the redemptive period, an absolute title to it thereby vested in the plaintiff, subject only to proof, to the degree of reasonable certainty, that the defendant thereafter possessed the property in a capacity other than as owner. In this connection we cite the following cases: Levy v. Ward, 32 La. Ann. 784; Jackson v. Lemle, 35 La. Ann. 855; Marbury v. Colbert, 105 La. 470, 29 So. 871, 872. The Ward and Jackson Cases hold that a judicial affirmance of the title is not necessary; and in the Marbury Case the court said:

"A sale which stipulates the equity of redemption—vent a remere—passes title to the purchaser, but to this end it is necessary that the vendee should give a real and reasonably adequate consideration, and take actual possession of the property, or else that such explanation be forthcoming, when required, of the continued possession of the vendor as excludes the idea of his still existing ownership."

On the first appeal we found that, owing to the then existing local conditions, the price stipulated in the deed of sale was adequate consideration for the property.

The testimony in the record now before us is not entirely satisfactory, but our consideration of it has led us to the conclusion that it is sufficiently convincing to meet the burden of proof imposed upon the plaintiff by reason of the defendants' continued possession of the property.

Summarizing the testimony, we find that defendant denies that he sold or intended to sell the property. He admits that he owed the plaintiff a past-due indebtedness of more than $2,000. He admits that he executed and signed the deed, which, on its face, purports to be an act of sale, with the right reserved therein to redeem the property on or before the first day of the following January, upon the payment to the plaintiff of $2,000. He admits that, after the expiration of the period of redemption, he agreed to pay the plaintiff $200 per year and to pay all taxes assessed against the property, annually, if permitted to remain in possession of the property. He says that the $200 annual payment represented the interest on his indebtedness to the plaintiff, but he makes no attempt to explain

his agreement to pay all taxes assessed against the property. He admits the genuineness of certain letters, testified to on the first trial, which he wrote to the president of the plaintiff bank, and he has offered evidence showing that, during the years subsequent to the expiration of the redemptive period, he has, on three or four occasions, paid out small sums for the repair and maintenance of the dwelling on the premises in which he lived. On the other hand, the former president of the plaintiff bank, but who is not now connected with that institution, testified that he, personally, conducted all of the transactions the defendant had with the plaintiff bank. He testified that the deed transferring the property of the defendant to the plaintiff was a bona fide sale of the property, with the right of redemption; that, after the expiration of the period of redemption, the defendant wanted to retain possession of the property because of its probable enhancement in value, by reason of prospective oil developments in the locality, and he agreed to permit the defendant to remain in possession upon the payment to the plaintiff of $200 per year as rent therefor, and upon payment of all taxes assessed against the property. He further agreed that if defendant found a purchaser for the property, for a price in excess of its cost to the plaintiff and such other sums as the defendant might then owe the plaintiff, the plaintiff would transfer the property to such purchaser and would pay to defendant the total price received for the property, in excess of such sums, as compensation to him for negotiating the sale. He testified that, under this agreement, the defendant paid the stipulated rent for one year and, as payment of rent for the three following years, the plaintiff accepted the defendant's promissory note for $700. It is shown that the $700 note was executed and is held by the plaintiff. It is shown that, from the date of the deed, the property has been assessed as the property of the plaintiff, and that defendant has annually paid the taxes on that assessment. It is shown that, after the period of redemption expired, the property was carried on the ledger of the plaintiff bank as real estate owned by the bank, and that the note representing the defendant's original indebtedness to the bank was cancelled.

The certified copies of the bank's ledger sheets, in the record, show that the defendant was charged with the rent of the property for the years 1912, 1913, and 1914. Mr. King, the then president of the bank, testified that at a later date he agreed to transfer the property to the defendant for the sum and price of $3,500, represented by five notes of $700 each, payable in 1, 2, 3, 4, and 5 years after date; that these notes were drawn and signed by the defendant in the bank; that defendant was to have the deed prepared, and the notes were given to him for that purpose, but the defendant failed to carry out the agreement.

On the trial, the defendant denied that he signed the notes. The notes are not sent up in the original for our inspection, but it is shown that the space where the signature should be affixed has been partially cut off, and, in commenting on one of these notes, which was offered in evidence, in this case, the trial judge said:

"This note has been signed by somebody. The witness's testimony is that he did not sign anything." (Trans. p. 71.)

The defendant admits that he has not had possession of the property as owner since 1914. He says he sold the property, in 1914, to his son-in-law, and his possession since that time has been for his son-in-law. (Trans. p. 75.)

In the former suit we held that this sale was a simulation and avoided it. The defendant's testimony does not impress us seriously, especially when considered in connection with this and a second simulated sale, which was also avoided in the original suit. On the other hand, the testimony of Mr. King is supported by the records of the plaintiff bank; by the assessment of the property in the name of the bank; by defendant's payment of the taxes on that assessment; by his payments, for possession and occupancy of the property, first by a cash payment for, at least, one year, and thereafter by note for about three years, after the expiration of the period of redemption fixed in the deed of sale.

The testimony as a whole convinces us that defendant's possession of the property, after the expiration of the redemptive period, was not as owner, but, first, as lessee of the bank, and, subsequently, by sufferance, as custodian for the bank.

For these reasons the judgment appealed from is reversed; the defendant's plea of prescription acquirendi causa is overruled, and it is now decreed that plaintiff be, and it is hereby recognized, as the owner, with valid title, to the following described property:

The northeast quarter of northwest quarter of section 23, township 29 north, range 16 west, Louisiana meridian, and lots 8, 9, 10, 11, and 12, of block 6, and lot 2, of block 21, of the town of Odessa Caddo parish, La., and that the costs of this appeal be paid by the defendant.

### On Rehearing.

O'NIELL, C. J.

The plaintiff claims a tract of land containing 40 acres, in Caddo parish, and six lots in the town of Odessa, in that parish.

The suit is founded upon a deed signed by the defendant, J. H. M. Thomas, to the plaintiff bank, dated the 11th of January, 1908, in which deed the price was said to be $2,000 cash, with this right of redemption, viz.: "It is understood and agreed that if this amount or such part thereof as is due on January 1, 1909, is taken up this deed is to be made back to me, otherwise to be in full force and effect." This suit was filed on the 31st of July, 1926; that is, more than seventeen and a half years after the time for redemption had expired, and more than eighteen and a half years subsequent to the date of the deed. As Thomas had remained continuously in possession of the property during all *of that time, and as the true consideration for the sale was not $2,000 cash, but a past-due debt of $2,000 which Thomas owed the bank when he signed the deed, he pleaded that the transaction was not in fact a sale, but only a pignorative contract, to secure the payment of the debt. The district court sustained the defense and rejected the plaintiff's demand. On appeal, this court remanded the case for the introduction of additional evidence as to whether the possession of the property by Thomas was as owner, or as lessee, agent, manager or custodian for the bank. See First National Bank v. Thomas, 168 La. 482, 122 So. 589. The district judge heard the additional evidence and again decided in favor of the defendant. The bank again appealed, and, on the original hearing of this appeal, we reversed the judgment, being of the opinion that the defendant's possession of the property, after expiration of the time for redemption, was, first, as lessee of the bank, and, afterwards, by sufferance, or as custodian for the bank.

In remanding the case for the introduction of additional evidence on the question of the capacity in which Thomas remained in pos-

session of the property, we said that, unless it should be established that his possession was as the bank's agent, lessee, manager or custodian, the judgment rejecting the bank's demand would have to be affirmed. The law of the case was thereby settled, and the only remaining question was the question of fact, whether the possession which Thomas retained was as owner of the property, or as agent or lessee of the bank; which question the district court has twice decided in favor of Thomas.

In the opinion heretofore rendered in this case, we applied the doctrine announced in Marbury v. Colbert, 105 La. 476, 29 So. 871, 872:

"Hence we hold that redeemable sales of immovable property, *unaccompanied by the delivery of the thing sold,* will be considered, as between the parties, in the absence of evidence to the contrary, as mere contracts of security, and either party to the contract is at liberty to maintain this position.

"A sale which stipulates the equity of redemption—vente a remere—passes title to the purchaser, but to this end it is necessary that the vendee should give a real and reasonably adequate consideration, and take actual possession of the property, or else that such explanation be forthcoming, when required, of the continued possession of the vendor as excludes the idea of his still existing ownership."

That doctrine was affirmed in Latiolais v. Breaux, 154 La. 1009, 98 So. 620, 621, where it was said:

"Hence the one test by which to determine whether a contract evidences a real sale with right of redemption, or a mere contract of security, has ever since been whether the purchaser has gone into actual possession. See Caldwell v. Trezevant, 111 La. 410, 35

So. 619; Bonnette v. Wise, 111 La. 855, 35 So. 953; Leger v. Leger, 118 La. 322, 42 So. 951; Eames v. Woodson, 120 La. 1031, 46 So. 13; Rion v. Reeves, 122 La. 650, 48 So. 138; Butler v. Marston, 145 La. 41, 81 So. 749.

"We think the rule, as thus stated, and as adhered to by this court, is sound in law, simple of comprehension, and easy of application. It avoids the necessity of attempting to reconcile the always conflicting testimony of the parties, where perchance each may be telling the truth as to his own intentions; and thus leaves the contract to be interpreted by facts readily proved and in accordance with the well-settled rule of law that a contract is to be interpreted according to the manner in which the parties themselves have executed it. C. C. art. 1956."

The only witnesses who testified with regard to the understanding between Thomas and the bank, or who knew anything about it, were Thomas himself and J. G. King, ex-president of the bank. King gave no better testimony for the bank on the second trial than he had given on the first trial. He said that Thomas had paid $200 as rent for the first year after the expiration of the right of redemption, and had given a note for an amount exceeding $600 for the past-due rent for the next three years. Thomas denied that he had ever paid any rent. He had been paying 10 per cent. interest per annum on the loan of $2,000, and if he paid $200 at the end of the redemption period, it might well have been intended as interest on the debt. In our original opinion rendered on the present appeal, we expressed the belief that a note for $700 found in the record was the note which King had referred to as having been given to represent past-due rent; but after a more careful examination of the record we find that this $700 note was one of five such notes which King had requested Thomas

to sign, and for which King proposed, on March 19, 1912, to transfer the property to Thomas; which proposition was never accepted by Thomas. From that day until this suit was filed—for a period exceeding fourteen years and four months—the bank made no claim of ownership of the property, or protest against Thomas' remaining in possession without paying any rent.

After a more thorough examination of the evidence in this case we do not find any more reason now for reversing the judgment of the district court on the question of fact presented than there was on the first appeal.

The judgment appealed from is affirmed.

BRUNOT, J., dissents.