TATE, Judge.
This is an action in boundary. Plaintiffs appeal from judgment which fixed the eastern boundary of their land, not on the governmental quarter-section line per their record title, but as along an ancient fence about 200 feet west thereof (i. e., 200' within their land per record title).
The question herein is whether an ancient fence lying within land sold by a seller can constitute as against the immediate purchaser a visible boundary separating the contiguous estates created by the sale, when such fence fails to accord with the ideal boundary line of the tract the seller warranted to deliver to the purchaser.
To be considered in this determination is the effect of a vendor’s retention of possession of part of the land expressly sold by him, with regard to application as against his immediate purchaser of the 30-year prescriptions of Article 852, LSA-C.C. (boundary actions) and Articles 3475, 3499 (acquiring ownership of immovables by adverse possession).
The diagram below shows the land involved in this controversy, being the two 40-acre tracts described by governmental survey as the NW^4 and the NE14 (together forming the NJ^), of the NW%, S.29, T 9 S, R 2 E, lying in Calcasieu Parish:

*45 Plaintiffs hold record title to the entire 40-acres of the NPFJ4 by purchase from Eugene C. Wilcox on March 5, 1949, and urge that the District Court erred in fixing their western boundary along the ancient fence (CD, in diagram) rather than by the quarter-section line (AB) according to the governmental survey and their record title. This had the effect of depriving plaintiffs of 6.65 acres of land that their record title called for.
Defendants are the heirs of Walter J. Lowe, who died in November, 1949, and own the NE(4- On February 4, 1919, Lowe had sold to Eugene C. Wilcox land described as follows:
“Northwest quarter of the Northwest quarter (NW)4 of NWJ4) of Section Twenty-nine (29), Township nine (9) South, Range six (6) West, Louisiana Meridian.”
Wilcox lived on said land until he sold it to present plaintiffs by this same description by governmental survey on August 17, 1949.[1]
In 1918 Lowe had purchased from Arthur T. Jones both the NW “forty” (sold later to Wilcox) and the NE “forty” (retained by him up until his death) shown above by diagram. At the time Lowe acquired the land, a “cross fence” (CD above) was situated thereon. This fence had been erected approximately in 1905 by Jones to separate his “mule lot” from his lower-lying “rice land” east thereof.
It is undisputed that the present fence is identically situated with the old “cross fence”, and that it has been continuously maintained at that place since-1905. Supported by a preponderance of the evidence are the District Court's further findings that from February 4, 1919, until August 17, 1949 (when plaintiffs purchased from Wilcox), “Lowe remained in open, physical possession of the property located immediately East of that fence; that Wilcox exercised actual physical possession during that period over the property located immediately West of such fence; that neither of said owners interfered with the possession of the other; and that Lowe did not acknowledge during that period that Wilcox owned any property located East of that visible boundary.”
Plaintiffs ably sought to show that certain pasturage rights and rice straw given by Lowe to Wilcox from the eastern “forty” were in the nature of rent for the use of Wilcox’ land east of the fence, which Lowe cultivated with his other lands; however, we like the District Court believe the evidence preponderantly indicates such perquisites were given in return for Wilcox’ aid to Lowe in harvesting the latter’s crops. The record reflects that during the entire period of time Lowe planted his rice crops right up to the fence within Wilcox’ record title, with Wilcox’ knowledge and without any objection or contrary claim by Wilcox.
Although Wilcox denied under oath in written interrogatories that the fence had ever been recognized as the boundary line between these two estates, the effect of this testimony is lessened by a letter he wrote by his own hand to the husband of one of defendants on October 27, 1953, immediately prior to suit, stating in part “ * * * I never had the land surveyed and I always considered the fence on the line.” (Tr-42.) In view of the other surrounding circumstances,- as well as this prior clearly contradictory statement, the District Court’s refusal to accept Wilcox’ testimony was not manifestly erroneous.
The District Court then held that the fence constituted and was recognized as a visible boundary between the two estates for a period of time in excess of thirty years; that therefore under the provisions of Article 852, LSA-Civil Code, defendants were entitled to judgment fixing the boundary along this ancient fence, since “where a tract of land has been possessed under *46 visible bounds for 30 years, such visible bounds should prevail over the ideal bounds called for in the titles.” Opdenwyer v. Brown, 155 La. 617, at pages 624-625, 99 So. 482, 484.
In this leading case, the Supreme Court further stated, 155 La. 617, at page 626, 99 So. 482, at page 485:
“It is our firm conviction that the public interest requires that boundaries established for more than 30 years should not be disturbed; and we think the law so provides.”
See also Duplantis v. Locascio, La.App., 1 Cir., 67 So.2d 125; Tate v. Cutrer, La.App., 1 Cir., 53 So.2d 285; Crow v. Braley, La.App., 47 So.2d 357; Picou v. Curole, La.App., 1 Cir., 44 So.2d 354; Henly v. Kask, La.App., 11 So.2d 230; Latiolais v. Robert, La.App., 1 Cir., 8 So.2d 347; De Bakey v. Prater, La.App., 1 Cir., 147 So. 734.
However, admitting that the 1905 fence was so situated past 1949, plaintiffs nevertheless urge reversal since “In the determination of boundaries we think the intention of the parties is an essential requirement.” Plester v. Smith, La.App., 72 So.2d 549, at page 551, holding:
“Irrespective of the existence of evidence of remains and vestiges of an old fence, even conceding that these are evidences of the 1902 fence, in the absence of an agreement or understanding evidencing the intent of the parties to accept this line as a boundary, the contention must fail.” 72 So.2d 552. (Italics ours.)
See also Arabie v. Terrebonne, La.App., 1 Cir., 69 So.2d 516.
The party who alleges that the claimed visible boundary is to be preferred to the ideal bounds called for by the titles, has the burden of proving that “the fence has been in existence and recognized as the boundary for the stated period of time.” Broussard v. Winn, La.App., 1 Cir., 41 So. 2d 486, 490.
Of course, if no boundaries between the contiguous estates have ever been fixed either judicially or extrajudi-cially, then the action is imprescriptible, Article 825, LSA-C.C.; the prescriptive periods, including that of 30 years under Article 852, LSA-C.C., only apply where the boundaries have been fixed incorrectly, Opdenwyer v. Brown, 155 La. 617, 620, 99 So. 482, see Note, “Action of Boundary”, 17 Tulane Law Review 303.
“When the two estates have never been separated, the boundaries must be fixed according to the respective titles. R.C.C. art. 845.” Opdenwyer v. Brown, 155 La. 617, 620, 99 So. 482, 483.
The evidence does not reflect any express agreement or understanding between the original vendor, Lowe, and the original purchaser, Wilcox, that the pre-existing “cross fence.” jointly maintained by them was to be the boundary between the land purchased by the latter and the land retained by the former. On the other hand, the vendor, Lowe, continued to cultivate and occupy the land up to the fence, even though it was included within the sale to Wilcox, without contrary claim (such as for a portion of the crops or other recompense) or without opposition by Wilcox, the purchaser. From this circumstance, continued over so long a period of time, arises at least a practical deduction that both purchaser and vendor regarded this fence as the boundary line between their contiguous estates.
But the serious and troubling question raised in the mind of this Court was whether, as between vendor and purchaser, the incorrectly placed visible bound can have the same effect as it does between persons who do not occupy this legal relationship.
It should be noted that in none of the above-cited cases does it appear that the court was concerned with whether within the 30-years’ possession the visible boundary incorrectly fixed per title could serve as the basis for a prescriptive boundary as between the original vendor and pur *47 chaser whose sale created the contiguous estates.[2]
In the present instance, from 1919 at least up until 1939, the original purchaser and the original vendor owned the contiguous tracts. In a sense, it seems contradictory to hold that the vendor intended to possess as owner the portion of the NW “forty” he had expressly sold and warranted to deliver to the purchaser.
In Frost Lumber Industries, Inc., v. Harrison, 215 La. 767, 41 So.2d 674, at pages 675-676, our Supreme Court stated in its latest pronouncement on the subject:
“It is, of course, ordinarily true that one in possession of property is presumed to hold as owner. But this presumption does not obtain where it appears that the possessor has sold the property and has remained in possession by the sufference of his vendee. * * * And while it is also well recognized in our jurisprudence that there is no legal obstacle which prevents a vendor from re-acquiring a prescriptive title to the property he has sold, Roe v. Bundy’s Heirs [45 La. Ann. 398, 12 So. 759] and Succession of Zebriska [119 La. 1076, 44 So. 893], supra (relied on by the Court of Appeal), are cogent authority for the proposition that such a vendor, who has continued in possession following the sale, must establish as a fact that he possessed as owner — for, in the absence of any evidence other than his retention of physical possession, he will be regarded as a precarious possessor for his vendee." [3] (Italics ours.)
“Where the vendor remains in possession of the property he has sold, he, like the co-owner, is not estopped from starting prescription running in his favor if he exercises on the property such control that the vendee cannot fail to notice that his vendor is holding the property with the intention of possessing as owner and not for the vendee,” Comments, “Elementary Considerations in the Commencement of Prescription on Immovable Property”, 12 Tulane Law Review 608 at 620-621.[4]
Excellent discussions of this subject, with citations of the French authorities (who are in conflict), are set forth in Roe v. Bundy’s Heirs, 45 La.Ann. 398, 12 So. 759, and in the original opinion in Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369, at pages 383-387. In this latter opinion (set aside on other grounds on rehearing) it is stated, 48 So.2d 387:
“We hold to the view that, when the continued possession of the vendor is unexplained, as to third persons there is a presumption of simulation, Civil Code, Article 2480, and as between the parties the unexplained continued possession of the vendor is presumed to be for the benefit of the vendee, Civil Code, Articles 3433 and 3489.”
*48 See also 2 C.J.S., Adverse Possession, § 123, p. 677, 1 Am.Jur. 818-819, Verbo “Adverse Possession”, Sections 47 and 48; Annotation, “Grantor’s possession as adverse possession against grantee”, 39 A.L. R.2d 353, esp. at 374, 375, 380, and 382.
In Roe v. Bundy’s Heirs, cited above, the Court held that since Article 2475, LSA-C.C., imposed upon the seller the obligation of delivery and Article 2468 obliged him to safeguard the thing until delivery, therefore during the interval between sale and delivery, the vendor’s continued possession was that of the vendee and the vendor’s title therefore was precarious and not adverse and that of owner. To like effect held Roberts v. Phillips, 6 La.App. 394, which at page 398 stated: “A vendor who remains in possession cannot acquire the property by prescription as against his vendee unless he does some act or in some way makes known to the vendee his intention to possess adversely to him.” (Italics ours.)
Cases apparently holding that the trial court’s determination as a factual matter was not manifestly erroneous that the vendor’s continued possession was adverse to and not for the benefit of his purchaser, include First National Bank of Atlanta, Tex., v. Thomas, 172 La. 772, 135 So. 235, earlier opinion (setting forth law of case) 168 La. 481, 122 So. 589; Succession of Zebriska, 119 La. 1076, 44 So. 893; Louisiana Highway Commission v. Raxsdale, La. App., 12 So.2d 631. See also Chronos Land Co., Inc., v. Crichton, 150 La. 963, 91 So. 408.
This jurisprudence admittedly deals with the acquisitive prescription of 30-years under Articles 3475, 3499, LSA-C.C., rather than the prescription applicable to boundaries actions under Article 852, LSA-C.C., as to which there is some difference, see Opdenwyer v. Brown, 155 La. 617, at pages 622-625, 99 So. 482. (For instance, the latter being favored, a possessor may be permitted to tack possessions for purposes of the boundary prescription, although not for the former.)
None of the Louisiana jurisprudence above-cited conclusively indicates whether the continued possession and occupancy of the vendor up to the fence line, including his cultivation of the crops, is actually adverse to the purchaser of the land sold, see e. g. Williams v. Bernstein, 51 La.Ann. 115, at page 124, 25 So. 411, quoted with approval in Collett v. Otis, La.App., 1 Cir., 80 So.2d 117, Beene v. Pardue, La.App., 79 So.2d 356.
But it may be noted that all of these cases with one exception (noted below) concern the situation where the vendor, despite the recorded sale to the purchaser, remains in physical possession of the entire tract of land sold. In such instances, such unexplained continued physical retention of the property sold gives rise (as the cases cited indicate) to a presumption that the continued possession by the vendor is for the benefit of the purchaser. This legal presumption might be explained in terms of the probabilities of human nature. It would be extremely unusual behaviour for a purchaser who has bought and paid for some property to permit without protest his seller to retain possession thereof under a claim adverse to the purchaser’s.
However, in the present instance, as in Louisiana Highway Commission v. Raxs-dale, La.App., 12 So.2d 631, the purchaser went into possession of part of the property sold and the vendor retained possession of another part. In this cited case, without discussion, the Court held that the continued possession per se by the vendor was adverse to the purchaser.
After serious reflection, we think that under the circumstances of the Raxs-dale and the instant cases, where the purchaser goes into possession of only part of the contiguous property purchased, then a presumption does not arise that, the unexplained continued possession by the vendor of the other part of the property is for the benefit of the purchaser and is not adverse thereto.
For it would be unusual behaviour for a purchaser to take possession of only part *49 of the contiguous property purchased. In the absence of explanation, it may be presumed that the purchaser took possession of all the property he thought he had purchased, and that the seller retained possession of property he thought he had not sold. The seller therefore possesses as owner, and such adverse possession for the requisite period of time would confer ownership by prescriptive title, even against his own purchaser; See Roe v. Bundy’s Heirs, 45 La.Ann. 398, at page 404, 12 So. 759, at page 761, quoted in footnote 4 above.
Further, under such circumstances, the retention of possession by the vendor up to a visible boundary such as a fence line, may constitute an acquiescence by both parties in such fence as a boundary, so as to be governed by the line of jurisprudence comprehensively discussed by our brothers of the Second Circuit, Judge Ayres the organ of the court, in Beene v. Pardue, 79 So.2d 356, and summarized therein at 79 So.2d 362:
“Where the record definitely supports the conclusion that the boundary between two estates has been established and has existed by visible marks for a period of more than thirty years prior to the institution of a suit, the jurisprudence is well settled that such an existing boundary will not be altered despite its failure to accord with the ideal or perfect boundary.”
We think therefore' the District Court properly held that the acquiescence for more than 30 years in the old fence as boundary line between the two estates by the owners thereof requires the acceptance of said fence as the boundary to be fixed between the said estates, despite its failure to be situated according to the boundary reflected by the record titles and despite the circumstance that for a long portion of this time these owners occupied the relationship of vendor and purchaser in the sale creating these contiguous estates.
For the above and foregoing reasons, the judgment of the District Court herein is affirmed.
Affirmed.

, By this same description, he had donated it to his brother, Walter S. Wilcox, on November 7, 1939, who also lived on it until his death on March 5, 1949, when Eugene Wilcox reacquired it by inheritance.

. Sharpless v. Adkins, La.App., 22 So.2d 692, 694, accepted a road as a visible bound and .included for part of the prescriptive period the adverse possession of the original vendor and purchaser; however, the original sale was of “Twenty-four acres (24), more or less * * * East of public road”, thus in effect affording basis for the holding that the boundary fixed was correctly fixed according to the record title.

. In this case, the vendor was held not to have possessed the land sold as an owner, because she enjoyed the usufruct over an undivided interest therein and possessed therefore partly in that capacity. See to same effect, Hill v. Dees, 188 La. 708, 178 So. 250.

. Cf. Roe v. Bundy’s Heirs, 45 La.Ann. 398, at page 404, 12 So. 759, at page 761:
“Coming to the consideration of - the question as to whether the vendor of the property is absolutely precluded from acquiring' title to the property convoyed by him to his vendee, adversely to that ven-dee, by the prescription of 80 years, we find that the weight of authority, both under the civil and common law, is decidedly in favor of the proposition that he is not estopped from doing so, and that the differences among commentators and courts on this subject have been principally as to the time, circumstances, and conditions under which such acquisition can be made and claimed, and under what evidence it can be proven.”