This case presents rather simple propositions of law and after they are brushed aside there is nothing but a question of fact relating to the age of an old fence which plaintiff claims has constituted, for over thirty years, the boundary line between his property and that of the defendants.
There is no dispute regarding the respective titles of the two properties. Alfred Broussard, the plaintiff, acquired his land from the Calcasieu National Bank of Lake Charles, In Liquidation, on February 5, 1945 and he shows a complete chain of title running back more than fifty years. The defendants, Mrs. Edith Blackshere Winn and Miss Fannie Edith Winn, hold title to their property through Thomas Hillyard Winn and that title also goes back a long number of years.
The title to each property, upon acquisition, was described according to governmental subdivisions. The plaintiff's property is situated in the north half of Section 18, Township 11, South Range 3 West of the Louisiana Meridian and that of the defendants in the South half of Section 7 of the same Township and Range. According *Page 487 
to their respective descriptions the dividing line between them would be the section line between Sections 7 and 18. Section 7 adjoins Section 18 on the north.
Disregarding the section line as the boundary, however, the plaintiff alleges that the north boundary of his property which is the boundary line between him and the defendants, has, for more than fifty years, been a fence. He alleges also that the boundary line between them has never been fixed in accordance with the provisions of Article 835 of the Civil Code which relates to the fixing of boundaries between estates.
He next alleges that for more than fifty years, by acquiescence of the owners of both of the said properties, the fence referred to was built and established as the boundary line between them and that the said fence as originally built and repaired and rebuilt from time to time, by acquiescence of the respective proprietors during all of that period, remained in its original position and that he and his ancestors and vendors in title have continuously, uninterruptedly, openly, notoriously and adversely, occupied and physically possessed the lands described as being his own, up to the said fence boundary line where it has remained for more than fifty years and he is therefore the owner of the said lands by virtue of the prescription of thirty years.
He next alleges that the said line as established by the fence built thereon, has remained in its original location until about a year ago, when the defendants, over his objections and protestations, and without being authorized by any order of court, went upon his said property and demolished and removed approximately 1/3 of the west portion of the said fence constituting the boundary line between them, so that approximately 1/3 of the said boundary line is no longer to be seen.
He pleads the prescription of ten years, of twenty years, and the prescription of thirty years against any change in the location of the said fence boundary line as originally built and established more than fifty years ago.
He then alleges that there is a dispute between him and the defendants as to the location of the boundary line between their respective properties as he claims the correct line to be the old fence herein referred to whilst the defendants claim the correct line to be to the south of that fence.
Pleading in the alternative, he alleges on information and belief that the old fence which he has described is situated on the dividing line between Sections 7 and 18 but in the event that that should not be so and that the old fence should be shown to be north of that section line, then the old fence is still the boundary line between their respective properties because it has been in existence and accepted as such for more than thirty years and he and his authors in title have possessed the land up to that fence for more than that period of time. He alleges that he has endeavored to obtain the consent of the defendants to fix the boundary line between them extra-judicially but they refuse to settle the matter amicably and it therefore becomes necessary to have a judicial fixing of the boundary made in the manner prescribed by law, to which end he asks that a surveyor be appointed by the court to take the necessary steps and to establish the boundary between them. In the prayer of his petition he asks for the necessary orders and that after proper proceedings, there be judgment in his favor and against the defendants, decreeing the boundary line between their respective properties to be fixed at the original location of the old fence line and that the said defendants be ordered to rebuild and replace, in its original location, that part of the fence which they have demolished and removed.
The district judge signed the necessary order appointing a surveyor and, as it appears from the record that the surveyor so appointed was unable to act, it became necessary that another be appointed in his stead.
In the meantime the defendants appeared in court and filed a motion in which they made it to appear that plaintiff had presented two inconsistent demands in as much as he had asked the court on the one hand to decree the boundary line between their two properties to be a fence that has existed for the past fifty years and on the other hand he had alleged that the boundary line *Page 488 
between the two properties had not been fixed, and they therefore asked that he be made to indicate on which of the two demands he would stand. According to the minutes of the court this motion was argued and presented to the court and denied. Subsequently, the defendants filed exceptions of no cause of action and no right of action and two days later they filed their answer.
Their defense seems to be that the true boundary line between the two properties is the dividing line between Sections 7 and 18 and that it is marked by an old fence which is not the fence referred to by the plaintiff however as being the boundary line between them. With respect to a certain portion of the said boundary line, defendants admit that it is not marked by a fence but with regard to the most eastern 1,429 feet of the lands claimed by plaintiff, defendants aver that the present fence and the section line coincide. Defendants admit that plaintiff has endeavored to obtain their consent to fix the boundary line extra-judicially, but allege that the only terms on which he offered to fix it were that it be fixed in accordance with what were his contentions regarding the same.
Further answering the defendants set out that previously, the plaintiff together with Harvey Broussard and Alcee Mere, each of whom own a small tract of land adjacent to the plaintiff's and also separated from their property by the same line, had instituted a suit against them in the district court for the Parish of Jefferson Davis and had alleged in their petition that the entire boundary line between their properties and that of the defendants was a straight line running from east to west and being a part of the north line of Section 18, Township 11, South Range 5 West and that therefore plaintiff is now estopped from asserting that the correct boundary line on the north of his property is any other than a straight line commencing at the east end of the fence which he alleges to be in existence along the north side of his part in said Section 18 and running due west from commencing point.
In the prayer of their answer, the defendants ask that plaintiff's demands be rejected and his suit dismissed at his costs. As an alternative they pray that should the court attempt to ascertain and fix the boundary line between their respective properties that the estoppel prayed for by them be recognized and that plaintiff be estopped from claiming a north boundary of his property to be any other than the line described in the petition in the suit formerly instituted by himself and his two co-plaintiffs. As a second alternative they pray that in the event plaintiff be not estopped that the boundary line between their properties be fixed in accordance with their respective titles.
The surveyor appointed by the court carried out the orders which had been given, made his survey and filed his proces verbal, all in accordance with law. He attached a map showing the complete details of his survey. The conclusion he reached is that the section line between Sections 7 and 18 is 10.4 feet south of the old fence which plaintiff claims is on the boundary line between the properties, and 11.5 feet north of a point established by the defendants as the proper boundary line fixed by a surveyor employed by them.
The trial court first disposed of the exceptions of no cause of action and of no right of action, by overruling the same. The case was afterwards tried on the merits and resulted in a judgment in favor of the plaintiff, decreeing the boundary line between the two properties to be along the location of the old fence as claimed by the plaintiff as it had existed for more than thirty years prior to the time when a portion of it was removed and torn down by the defendants. Plaintiff was given the right to institute a separate action against the defendants for such damages as he may have sustained by reason of the destruction of the fence and the defendants were taxed with all costs, including costs and fees of the surveyor appointed by the court. From that judgment, they have taken this appeal and again urge their exceptions of no cause and of no right of action as well as their defense on the merits to the effect that the old fence claimed by the plaintiff as being the true boundary line is not supported as such by the proof in the record. They urge that the real boundary is the dividing section line between the two properties. *Page 489 
We do not find any difficulty in agreeing with the trial judge in his reasons for overruling the exceptions of no cause and of no right of action. The exceptions are based on the proposition that under the allegations of the petition, plaintiff cannot support his demand for a fixing of the boundary between the two properties. Counsel contend that since plaintiff alleged in one paragraph of his petition that the boundary between the two estates had been established, he cannot invoke the right granted to a party under Article 823 of the Civil Code to compel them to fix the limits of their respective properties, as that article specifically provides that it is only when two estates or lands that are contiguous,have never been separated, that neither of the parties has a right to compel the other to fix the boundary. They urge further that the Supreme Court in the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 483, in referring to that article held that the action in boundary lies in three cases only: "(1) When the adjoining estates have never been so separated; (2) when the two estates have once been separated, but the physical bounds are no longer visible; and (3) when the bounds have been fixed incorrectly."
If we were concerned with only the first of the three conditions enumerated there would be merit in counsel's argument because it may very well be that according to the allegations made by plaintiff, his estate has been separated from that of the defendants. As a matter of fact, he relies throughout on that very separation alleged by him in his petition which consists of an old fence that has existed for fifty years or more. However in a subsequent paragraph he further alleges that the old fence had remained in its original location until about one year before when over his objections and protests, the defendants went upon his property and tore down a part of it, to be exact approximately 1/3 of its west portion, and the result was, that approximately that much of the boundary line between them "is no longer to be seen". That allegation, in our opinion, as it was in that of the district judge, brought the case squarely within the terms of the second condition enumerated in the cited case involving Article 823 of the Civil Code, and even more squarely within the language of that article which gives to one of the parties the right to compel the other to fix the limits of the respective properties "if the bounds, which have been formerly fixed, are no longerto be seen." (Italics ours.)
There was another point presented in the lower court in support of the exceptions and which was passed on by the district judge but as it is not urged before us we find it unnecessary to review his ruling thereon.
This brings us now to a consideration of the case on the merits which involves a consideration of the testimony relating to the fence which the plaintiff claims is the boundary line between his property and that of the defendants, constituting a visible bound or monument which has existed for more than thirty years, and to which the ideal boundary which may be shown by a survey has to yield.
We will take up for discussion first the so-called ideal boundary which would be the dividing section line between Sections 7 and 18, Township 11, South Range 3 West. Even though there were three surveys made by three different Civil Engineers, all three of whom testified in the case, we find that we are still left without a definite location of that line.
First we have the survey made by Jasper Bourgeois, Civil Engineer employed by the plaintiff, who tried to locate it. His testimony is to the effect that failing to find any bearing tree used by the government at the time the government survey was made, he used, as his commencing point, the stump of an old tree in the swamp on the north shore of Lake Arthur which he identified, as best he could, as one of the government bearing trees and surveyed along the range line between Ranges 3 and 4 and claims that he located the section line between Sections 7 and 18 at the same point, or almost on the same line on which the old fence claimed by the plaintiff as being the dividing line, was built. He testified that using a tree which he identified as being one of the government bearing trees, as a starting point, is an accepted method in the practice of *Page 490 
surveying. We are left in serious doubt as to the conclusion he reached as to the dividing section line being where he placed it. His testimony however, with regard to the fence and its apparent age is of some value, but this we will discuss later on.
Fred Shutts is a Civil Engineer who was employed by the defendants. He had made his survey prior to the former suit instituted by plaintiff and his co-plaintiffs, Harvey Broussard and Alcee Mere. In fact it was on the basis of what he established as the true dividing line of the two properties that the defendants proceeded to demolish the old fence with the idea of rebuilding a fence on the line which he had fixed at some distance south of the old fence. Shutts neither, could find any government bearing tree or any other government marks to take as his starting point in making his survey and what he did was to go the the north boundary of the defendants' property on the dividing line between Sections 6 and 7 and use an old fence which he found there as his starting point. Using that point, he measured a mile coming towards Section 7 and struck a point at that distance to establish the true line between Section 7 and 18 in order to fix the boundary between the two properties. He states that his method is also accepted in good surveying, but it seems to us to be as arbitrary as that used by Bourgeois. We conclude therefore that under Shutt's testimony we have no more reason to say that he has definitely fixed the dividing section line between 7 and 18 than did Bourgeois.
The surveyor appointed by the court, E. S. Gorham, seems to have approached the problem by a different method also. In his proces verbal, he says that he found nothing more convincing as a starting point than a very old fence at or about the northwestern corner of Section 6. That seems to be the same starting point as was used by Shutts but strange to say, when Gorham reached the fence between the two properties, as is stated in his proces verbal, he was then 10.4 feet south of Bourgeois' and 11.5 feet north of that which had been set by Shutts in his survey.
We do not pretend to question the ability of these three Civil Engineers and we greatly respect the conviction of each as to the conclusion he has reached in this matter. The fact remains however that there is too great discrepancy among them for a court to accept the findings of any of them as the true location of the dividing line between Sections 7 and 18, Township 11, South Range 3, West as established in the government survey made many years ago.
Because of the confusion regarding that line, the case then, in our opinion, presents a classical example of the kind of case that arises under, and has to be decided according to the provisions of Article 852 of the Revised Civil Code and especially as the law was interpreted by the Supreme Court in the case of Opdenwyer v. Brown, supra. The ideal boundary; according to the titles, is a governmental section line which it is impossible to locate on the ground. Otherwise there is a visible boundary in the form of an old fence on a line between the two properties which may serve as a boundary provided it has been in existence for thirty years or more. The determining question therefore is whether or not the plaintiff, who has the burden of proof, adduced sufficient testimony to show that the fence has been in existence and recognized as the boundary for the stated period of time. He comes before this court with a favorable judgment from the court below and we are then left with only the question whether or not the district judge who rendered that judgment committed manifest error in doing so. We are satisfied that he did not.
The trial judge in a carefully prepared written opinion discussed the testimony of various witnesses with regard to this fence at some length and he moreover took the trouble to personally inspect the locality. There is no doubt that his investigation helped very materially to confirm his opinion that the testimony of several witnesses for the plaintiff was correct when all of them stated that it is their recollection that the fence was in the same place where it exists today for more than thirty years, some of them placing the period as far back as fifty years. Among the witnesses who so testified was Theodore Broussard who owned and lived on the property *Page 491 
now owned by the plaintiff, from 1906 to 1927. He is 72 years of age and remembers the fence as it existed even as far back as the year 1900. Arthur Gudry, another witness for the plaintiff, is 75 years old. He farmed the land as far back as the year 1894. He testified that the fence was built by a family named Lorraine who owned the property at that time. He says that the fence is at the same place where it always was, and he inspected it just the year before this case was tried in the district court. Harvey Broussard, 57 years old and Jules Dupre, 52 years old are two other witnesses who testified for the plaintiff that they are familiar with the property and remember the fence for as long as their memory can take them back to. All of these witnesses were positive that the fence never was moved from its present location and while some of them admit that it is not on a direct straight line, it is evidently a straight fence as fences generally are considered in the country.
Several witnesses, including the Civil Engineer, Jasper Bourgeois, identify the location of the fence by certain trees planted along its line and in some instances these trees are identified as being rather aged. Some also testified about pieces of fence wire being imbedded in the bark of some of the trees.
Bourgeois also stated that it is a common practice in his profession, in determining the age of an old fence, to give great weight to the fact that there are large trees along its line. The witness E. L. Gorham, concurred in the importance that is to be attached to full grown trees along a fence line.
The only testimony which contradicts that of these numerous witnesses is that of one of the defendants, Miss Edith Winn and a man by the name of H. J. Hurst who formerly worked for her father. These two witnesses seem to confuse the fence plaintiff claims serves as the boundary between the two properties with another fence located south of a driveway or a lane extending from the highway and which lane had been established by Miss Winn's father some time in the year 1918. Miss Winn especially contends that that fence was on the section line as found by the surveyor, Shutts, and that at one time her father pointed out to her this line as being the boundary line between the two properties, identifying the same as being in line with a large oak tree. With regard to this testimony the district judge had this to say: "It is obvious from an inspection of the premises and from aerial photographs which were introduced in evidence that a driveway did exist some years ago along the north side of said row of Oak trees and although the court is convinced that Miss Winn and Mr. Hurst are sincere and are absolutely honest in their testimony, it is also convinced that their recollection as to the location of such driveway is in error. The court concludes from the evidence that the driveway leading from the highway in an easterly direction to the Marcena Broussard home was located north of the row of Oak trees until 7 or 8 years ago, that the fence which then ran along the south side of such driveway and continued in an easterly direction is the same fence which presently separates the two properties and that such fence was then accepted and regarded as the boundary line now in dispute and has been regarded as the boundary line between said two tracts of land for more than thirty years."
Other than the testimony of Miss Winn and Mr. Hurst, the defendant presented that of two other witnesses, one by the name of L. V. Laurents and the other A. W. Jessup. These two witnesses were employed by the defendants to remove the existing fence and rebuild a fence along the line established by the Shutts survey. They testified that while digging postholes along the new line, and while Miss Winn was present, they found old pieces of lumber buried in the ground with small pieces of wire attached to them, and these, they claim are remnants of old fence posts, which once upon a time, existed on that line. They also say they found a tree stump which had been cut off even with the ground on the line. The defendants offered a small piece of the deteriorated lumber in evidence but evidently the trial judge did not give it much consideration as proof. It was not sent up with the transcript and we therefore are not able to examine it. *Page 492 
A reading of the testimony of these witnesses in connection with this point, does not impress us very much as affording testimonial proof of the existence of a fence on that line such as is claimed by the defendants. Not a single witness was produced who has any recollection of ever having seen such a fence on that line. Besides, it is rather significant that Miss Winn, who is said to have been present when this discovery was made, did not testify at all concerning it when she was on the witness stand.
Under the facts therefore as he found them, and in which we certainly believe he was correct, the trial judge properly applied the law as pointed out in Article 852 of the Revised Civil Code establishing the boundary line between the two properties as being at the location of the old fence which was proved by an abundance of testimony, to have existed and been recognized as the boundary line between the two properties for more than thirty years. The case of Opdenwyer v. Brown, supra, and also the case of Latiolais v. Robert, La. App.,8 So.2d 347, are authority in support of the judgment rendered.
Defendants complain that they have been taxed with the costs of the survey which, they claim, should have been taxed jointly between them and the plaintiff, as provided for in Article 663 of the Revised Civil Code. Whilst it is true that this article provides for costs at the joint expense of the parties when one is compelled by the other to have the boundary line between their properties fixed, judicially, it is also true that in certain cases, where one of the parties arbitrarily refused to an amicable fixing of the boundary line and the other has to resort to a judicial proceeding like in this case, equity steps in and forces the party who refused, to stand the whole burden of the costs of the survey.
We held that very thing in the case of Olivier et al. v. Melancon, La. App., 40 So.2d 683, decided only a few weeks ago and in doing so relied on the authority of Dufrene v. Bernstein, 190 La. 60, 181 So. 859. Defendants counsel urge that in this case there was a bona fide dispute as to the correct location of the boundary line, and therefore, under some authority which they cite, the provisions of Article 663
of the Civil Code should be applied. In plaintiff's petition it is alleged that an amicable request was made to have the line fixed extra-judicially and the same was refused by the defendants. This allegation was admitted in their answer. If that were the only thing that had happened, it may be that counsel's argument would be sound and it would be that in order to settle an amicable dispute between the parties it became necessary to have a judicial survey made. But that wasn't all. After the request had been made, the defendants further resisted an amicable adjustment by employing their own surveyor who established the boundary line at a place other than where the old fence stands. With the information from that survey alone, they then proceeded to tear down the old fence with a view of rebuilding a fence on the line which they then claimed was the true boundary and it took a court order to restrain them. We believe, that under the circumstances no further demand on the part of the plaintiff was necessary. These defendants said that they would be unwilling to accept any other line than the one their surveyor had established and the only recourse left to the plaintiff, was to call for a judicial survey as he did. We believe therefore that the costs of that survey were properly taxed against the defendants.
For the reasons stated, the judgment appealed from is affirmed at the costs of the defendants, appellants herein. *Page 493