TALIAFERRO, Judge.
This is a boundary action in which the plaintiff alleges that the defendant has in his possession through encroachment upon .her lot, a strip of land belonging to her, that fronts on Fair view Street in the Town of Pineville, Louisiana, 11.5 feet, and which runs back.northerly between parallel lines *209 58 feet to lot designated on plat as “John W. Avery”, being in the Fairfield Addition to said town.
In the year 1924, Commodore W. Brister, from lands owned by him, laid out and constituted said Addition, which consisted of many lot9 designated by numerals', while two lots, much larger than the others, in the northeasterly corner of the Addition merely carried the names of the owners, viz.: “C. W. Brister” and “John W. Avery”. All of the lots, large and small, were given measurements and were delineated on a plat of the Addition made by the surveyor who did the groundwork necessary to create same.
In order to the more intelligently reflect the locus in quo, the relative positions of the lots, etc., we here reproduce said plat and make it a part of this opinion, it having been recorded in Plat Book “P”, page 49, of the records of Rapides Parish.

*210 It will be observed from the plat that there is in the angle formed by Fairmount and Fairview Streets the larger lot accredited to C. W. Brister, and north of it lies the John W. Avery lot. Both face Burns Street on their east sides. The width of Burns Street is not given on the plat, but according to tire scale of one hundred feet to one inch, its width is 25 feet. This conclusion is supported by the testimony of surveyors who appeared as witnesses in the case.
It will also be noted that the south line of the Brister lot (on Fairview Street) is given as 290 feet.
Commodore W. Brister died owning this large lot. On April 1, 1942, his widow, Elaine Holmes Brister, individually and as tutrix of her two minor children, Commodore W. Brister, Jr., and Oleta Dolores Brister, under court authority, sold and conveyed to Arthur K. Ammen the following described portion of said lot, to-wit:
“A certain lot or parcel of ground located in the Town of Pineville, Rapides Parish, La., together with all rights, ways and privileges appurtenant thereto, and all buildings and improvements thereon, being a part of the Fairfield Addition to the Town of Pine-ville and being a part of the large lot shown in the name of Commodore W. Brister on plat of Fairfield Addition recorded in Plat Bk. 4, page 49, records of Rapides Parish, and more particularly described as follows, to-wit: Begin at that corner of said lot shown in name of Commodore W. Brister on plat aforesaid, which corner lies at the intersection of Claiborne (or Burns) St. and Fairview Street; from said point of beginning thus established run along the westerly property line on Claiborne St. in a Northeasterly direction for a distance of 116.74 feet to a point, the distance between said point of beginning and said point secondly described constituting the frontage of the tract herein described on Claiborne Street; from said frontage on Claiborne Street run back between parallel lines, one of which is the northerly right of way line of Fairview St. for a distance of 125 feet to property in the rear. Being that portion of said large lot shown in name of Commodore W. Brister as per plat recorded in plat Book 4, page 49, which lies nearest Claiborne Street said portion herein described being 125 feet in depth and extending across the entire width of said larger lot. All as said property is more fully shown on plat of survey by L. J. Daigre, Parish Surveyor, dated March 18, 1942, a copy of which plat is hereto annexed, marked 'Ne Varietur’ by the undersigned notary public to identify same herewith, a photostatic copy of which plat is to be recorded in the Conveyance Records with this deed.”
It will be observed that this description begins at the intersection of Claiborne (or Burns) and Fairview Streets. Reference is made in the description to the original plat of the Fairfield Addition and also to a more recent survey of the lot made by L. J. Daigre, Parish Surveyor, on March 3, 1942, some thirty days prior to the execution of the deed, a plat thereof being attached to, made a part of, and filed with the deed. On this plat again the width of Claiborne or Burns Street is not given, but according to the scale on the plat, one inch to one hundred feet, the street is about 40 feet wide.
In the year 1918, another addition to Pineville was created and plat thereof recorded, designated as “Ozone Heights”. Part of this addition is immediately south of and a part immediately west of the tract of land subsequently acquired by Commodore W. Brister from which the Fair-field Addition was created. On this “Ozone Heights” plat, Claiborne Street is given as the east boundary, and the width as 40 feet. It ties into Burns Street at its southerly end.
It appears that the town authorities when improving Claiborne Street and providing drainage thereon assumed that Burns Street was of the same width as Claiborne Street and arbitrarily extended its western line or limits some 14 feet, thereby encroaching upon privately owned property along the entire front of the C. W. Brister lot to that extent.
It also appears that the town first widened Burns Street not long before the beginning of World War II, and from that time Burns *211 Street has been called and known as Claiborne (or Burns) Street. •
This action by the city fathers is the real cause of the controversy reflected from this suit.
On February 16, 1945, Ammen sold the lot he acquired from the Bristers to Lee M. Able, but by a more brief description. The description ends with words “property in the rear” of the description in the deed whereby he acquired. No reference is made to the Daigre plat.
On February 20, 1945, Able conveyed the lot to the defendant by same description as appears in deed to him.
On July 10, 1945, Orville J. Richardson sold and conveyed to the plaintiff the western part of the C. W. Brister lot, which is described therein as follows:
“A certain piece, parcel or lot of ground, together with all buildings and .improvements thereon situated, and all rights, ways and privileges thereunto belonging, being, lying and situated in the Fairfield Addition to the City of Pineville, Parish of Rapides, State of Louisiana, as shown by plat of said Addition of record in Plat Book 4, page 49 of the records of Rapides Parish, Louisiana, and being a portion of the unnumbered lot marked ‘Commodore W. Brister’ on the aforesaid plat of survey and being more particularly described as follows: From the corner of said ‘Commodore W. Brister’ lot common to Fairmount and Fairview Streets, run thence along Fairview Street towards Burns Street a distance of 165 feet; thence back from Fairview Street on a line parallel with Burns Street a distance of 116.4 feet to the line separating the said ‘Commodore W. Brister’ lot and the former ‘A. W. Avery’ lot, as shown on said plat; thence to the left along the line separating the said Brister and Avery lots a distance of 118.8 feet to Fairmount Street; thence along Fairmount Street a distance of 127 feet to the point of beginning; said property being shown in shaded line on plat of Irion J. Lafargue, Surveyor, dated October 29, 1946, which is annexed to, and made part of deed from Brian Hathorn, et al, to O. J. Richardson, dated October 31, 1946, recorded November 1, 1946 in Conveyance Book 333 page 375 of records of Rapides Parish. Being the same -identical property acquired by vendor herein, O. J. Richardson, from Brian Hathorn, et al by deed dated October 31, 1946, recorded November 1, 1946, in Conveyance Book 333, page 375 of the records of Rapides Parish, Louisiana.”
Richardson deraigned title back to the widow and heirs of C. W. Brister, deceased.
While the plat of the Fairfield Addition gives the south boundary of the “C. W. Brister” lot as 290 feet, by actual measurement to Burns Street, as originally laid out, it is 294 feet.
Therefore, it clearly appears that the Bristers sold to Ammen and to plaintiff’s author in title what they supposed was the entire frontage of the Brister lot on Fair-view Street, but the easterly end of the line fell' 14 feet east of the outer edge of the ditch that now forms the western boundary of Claiborne .or Burns Street.
If plaintiff’s south line begins at the intersection of Claiborne and Fairview Street (as the- former has been widened), perforce the Bristers did not have a frontage of 165 feet on Fairview to sell to plaintiff’s author in title, but some 155 feet. If his line is held to begin at the intersection of Burns and Fairview Streets,, in keeping with the measurements on the original plat, and plaintiff is given her full 165 feet on this street, there will be a strip of 4 feet between the two lots. Again, if defendant’s south line is held to begin at the present intersection of Claiborne or Burns and Fairview Streets, taking into consideration said four feet strip, defendant has in his possession some 10 feet frontage of the 165 feet to which plaintiff has deed.
Plaintiff prayed for appointment of a surveyor to run and establish the true boundary line between her lot and that of the defendant. This was done and the surveyor made report of his action. Thereafter, defendant answered. He resists the , effort to have the boundary line established on the basis sought by the plaintiff for the reason that when Ammen purchased the lot *212 from'the Bristers a surveyor was employed to and did survey, fix and establish the very line involved herein; that the line so fixed was mutually agreed to by the Bristers and Ammen, and that the latter erected a fence along the line thus established; that said line was approved and acquiesced in by Brian Hathorn and O. J. Richardson, predecessors in title of the lot claimed by plaintiff; that when plaintiff purchased the lot she knew of the long established line between the properties; that she knew the fence was the division line between the lots, as same was pointed out to her as such and she, also, has acquiesced in said fence being the dividing line between her and the defendant.
Plaintiff’s demand was rejected and her suit was dimissed.
The fence line referred to in defendant’s answer is 125 feet from the intersection of Claiborne (or Burns) Street, (as widened), with Fairview Street. The survey made by the Civil Engineer appointed by the Court in this case proves this fact, but the surveyor established a line between the lots by beginning at the intersection of the streets as fixed in the plat of the Fairfield Addition prior to the widening of Claiborne or Burns Streets. The fence has been covered by hedge and was quite conspicuous prior to and at the time plaintiff purchased the lot, although she was evasive when questioned about it. We quote portions of her testimony, viz.:
“Q. And when you bought the property you understood that that was your rear line, did you not? A. No.
“Q. What did you think it was? A. When I signed the contract to purchase, it was for one hundred sixty-five (165) feet on Fairview.
“Q. I understand that, but that isn’t what I asked you. A. I did not see the fence; I’m sorry.
“Q. Didn’t you understand that that was your rear boundary when you bought that property? A. I understood that I had 165 feet.
“Q. I understand that, madam, but you will not answer my question. You looked at the property before you signed the deed, did you not? A. Once.
“Q. And you saw the fence, did you not? A. No, I saw a hedge. I didn’t see the fence.
“Q. The hedge and the fence are right together, aren’t they? A. Yes.-
“Q Didn’t you understand that that was the rear of your property before you signed that deed? A. It is difficult, to see the fence because of the hedge.
“Q. Then the hedge — well, didn’t you understand that the hedge was the rear of your property? A. No, I didn’t.
“Q. And you bought the property, then, without even understanding to where your property extended? A. I did, because I bought it in a hurry.
“Q. You naturally presumed that that was the rear, did you not? Wasn’t Mr. Ma-honey occupying everything on the other side of the fence? A. I didn’t presume so, no.
“Q. You didn’t ascertain whether there was any property owned or occupied by anyone on the other side of that hedge? A. I did not.
“Q. You didn’t see any house on the other side? A. I didn’t.”
It is inconceivable that anyone would make an investment of nearly $11,000 in a piece of city real estate and not at the time inform himself as regards its true limits. At the time plaintiff purchased the property the defendant was living on his lot adjoining. She possessed and lived on her lot nearly 2 years before raising the boundary issue. She plants herself upon the proposition that she bought a frontage of 165 feet on Fairview Street and demands that she have it, regardless of its effect upon the adjoining owner.
It is now well established that boundary lines between adjacent realty owners may be established by them .and be effective without written evidence of the fact, and in a contest such agreement may be proven by parol evidence, same not being in contravention of the parol evidence rule as regards establishing title to realty by evidence other than in writing.
*213 We had this question before us in the case of Selfe v. Travis, La.App., 29 So.2d 786, et seq.
In that case we reviewed the applicable jurisprudence of this State, and quoted the pertinent rule found in 8 Am. Jur., page 797, Section 73. It reads: “Although there was in the early cases much doubt as to the validity or legal force of parol agreement and submissions to settle disputed boundary lines, it is now a well-settled principle of law that an unascer-tained or disputed boundary line dividing the lands of adjoining owners may be permanently and irrevocably established by a parol agreement of the adjoining owners. It is essential to the validity and binding effect of such agreement that the boundary line fixed by the agreement be definite, certain, and clearly marked, and that it be made by the adjoining landowners with reference to an uncertain or disputed boundary line between their lands. Such an oral agreement is not in contravention' of the statute of frauds; and when executed and actual possession is taken under it, it becomes conclusive against the owners and those claiming under them. It has been said that the efficacy of parol agreements and acts of the parties pursuant thereto conclusively to establish a boundary line rests upon the doctrine.of estoppel.”
Of course, the quoted rule primarily applies to the parties to the agreement and their heirs, but also equally applies to those holding under them, if the evidence direct and/or circumstantial proves that they had knowledge of the location of the established line, and bought and possessed in keeping therewith.
We are clear in the conclusion that plaintiff purchased believing the fence and hedge line to be the correct boundary between her lot and that of the defendant; and possessed accordingly until she learned of the increase in the width of Burns Street as above related, and consequent shift in the location of the intersection.
Believing the judgment appealed from to be correct, same is hereby affirmed, with costs.