ELLIS, Judge.
Plaintiffs, the owners of the following described property-:
A certain tract of land situated in the Parish of Lafourche, State of Louisiana, at about 19 miles below the Town of Thibodaux, on the' right descending bank of Bayou Lafourche; measuring 135 feet more or less front by a depth of 40 arpents; bounded above by.lands of Leonce Robichaux, now or formerly, and below by lands of Robert Dupuis, now or formerly, together with all the buildings and improvements thereon or thereto appertaining,
filed this action in boundary against the defendant who. owned a contiguous tract of land described as follows:
A certain tract of land situated in the Parish of Lafourche, State of Lousi-ana, on the right descending bank of Bayou Lafourche, about 19 miles below the Town of Thibodaux, measuring one arpent in width on said Bayou La-fourche by a depth of 40 arpents; bounded above by property of Alex Arabie and below by property of Willie Pierce, now or formerly, together with all the buildings and improvements thereon.
Plaintiffs’ suit is based upon an alleged fact that the contiguous tracts, of land never had their boundaries determined, either judicially or extrajudicially, and that any such boundary lines which may have been established are now obliterated, and that there has never been a conventional boundary agreement.
The defendant denied the facts upon which plaintiffs base their suit and alleged that there had been a visible boundary between the properties being a fence, which *518 was constructed about 1905 and by a survey in 1933, and the defendant therefore plead prescription of 10 and 30 years.
Pursuant to plaintiffs’ petition the Court appointed a surveyor who in accordance with the order made the survey and it is filed in evidence.
After trial of the case, judgment was rendered in favor of the plaintiffs and against the defendant, fixing and establishing the boundary in accordance with the procés verbal and map of the surveyor and overruling defendant’s prescriptive plea of 10 and 30 years, from which judgment defendant has appealed.
Plaintiffs’ suit was filed under authority of Article 823 of the LSA-Civil Code which is as follows:
“When two estates or lands contiguous, in cities or in the country, have never been separated, or have never had their boundaries determined, or if the bounds, which have been formerly fixed, are no longer to be seen, each of the owners of the contiguous estates has a right to compel the other to fix the limits of their respective properties.”
The defendant has plead 30 years prescription under Article 852 of the LSA-Civil Code, to-wit:
“Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to' retain it, and his neighbor, though he have a more ancient title, will only have a right to' the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession”,
and 10, years prescription under Article 853 of the LSA-Civil Code, to-wit:
“If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.”
The answer and the defenses set up therein are dependent upon the facts, as the law is well settled that an action in boundary lies only if there has been no sep-eration of the property judicially or extra-judicially or by agreement. LSA-C.C. art. 823 supra; Crow v. Braley, La.App., 47 So.2d 357; Selfe v. Travis, La.App., 29 So.2d 786; Griffin v. Mahoney, La.App., 56 So.2d 208; Opdenwyer v. Brown, 155 La. 617, 99 So. 482.
It is also well settled that prescription of ten years applies in a boundary action if there has been a prior determination by a surveyor in accordance with Article 833 of the LSA-Civil Code and consecutive articles, applicable thereto. Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672; Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635; Conrad v. Roussell, La.App., 37 So.2d 449.
The prescription of 30 years applies in a boundary action when a boundary between contiguous estates has been established and has existed by visible markers for a period of more than 30 years, and such visible boundary will not be changed despite the failure to accord with the ideal or perfect boundary. Opdenwyer v. Brown, supra; Latiolais v. Robert, La. App., 8 So.2d 347; Henly v. Kask, La.App., 11 So.2d 230; Broussard v. Winn, La.App., 41 So.2d 486.
The record shows that the property of plaintiffs and defendant forms a *519 part of a tract known as Buckhorn Plantation and described as being 7 arpents frontage on Bayou Lafourche by 40 ar-pents in depth. The map prepared by the surveyor under order of the Court shows that the rear line of the Buckhorn Plantation is much shorter than the front. The defendant contends, however, that his title must be interpreted as being 1 arpent front by 40 arpents in depth between parallel lines, and therefore one arpent in width on the rear. Such a contention is not borne out by the map nor the complete abstract of title on file in the record. Not only does the map show an irregular piece of ground with the rear much narrower than the front, which was subdivided and sold to various parties, but a common ancestor in titles, Simon Abraham. Many of the old titles show that this property was narrower in the rear than in the front. For example, in 1897 F. Gustin Gaude sold to Simon Abraham two pieces of property from one of which the plaintiffs and defendant’s property is a part, viz.:
“1st. A certain tract of land situated in the Parish of Lafourche, on the right bank of Bayou Lafourche, at about 20 miles below the town of Thibodaux, measuring about 3 ar-pents front by 40 arpents deep', closing towards the rear, being a portion of what was formerly known as the Buck-horn Plantation, the portion being herein bounded above by lands now or formerly of Cyprien Guidroz and below by other subdivision of said Buckhorn Plantation sold to Philip Calato.
“2nd. Another tract of land situated in the Parish of Lafourche, on the right bank of the Bayou Lafourche at about 20 miles below the Town of Thi-bodaux, measuring about 4 arpents and two-thirds front by 40 arpents deep closing towards the rear, being also a portion of what was formerly known as the ‘Buckhorn’ Plantation, said portion being bounded above by a subdivision of the said ‘Buckhorn’ Plantation sold to .William Pierce and below by lands of Raymond Plaisance.”
Also, in 1898 Lee Pierce scld to Simon Abraham a tract of land “measuring 1 ar-pent front by 40 arpents in depth with the proportional closing of the whole tract of what was formerly the Buckhorn Plantation,” and in 1899 at a Sheriff’s Sale, land belonging to Willie Pierce and being a portion of a subdivision of what was formerly known as Buckhorn Plantation was sold to Simon Abraham and it measured “one arpent front by 40 arpents in depth between closing lines.” In 1902 Simon Abraham sold to Oscar Adam a tract of land “measuring I1/2 arpents front on the public road along Bayou Lafourche between converging and diverging lines as the lay of these land runs by the depth of 40 arpents,” who in turn sold this same piece of property to one Willie Pierce in 1916 and described it as measuring more or less one acre in width on said Bayou Lafourche by a depth of 40 arpents.
The abstract of title in evidence further shows that the defendant’s property as described, supra, is bounded “below by property of Willie Pierce,” therefore, there can be no doubt that the width of the defendant’s property in the rear is not one arpent, that is, that the north and south boundary lines of defendant’s property are not between parallel lines.
As to the plea of 30 years prescription, the record shows by an examination of the abstract of title that the Buckhorn Plantation was laid out in a subdivision, but there is no map in evidence or at least it is not in the record, and there is no testimony that any of the surveyors stakes or any visible boundaries as a result of the survey in subdividing the Buckhorn Plantation still remained so as to constitute a visible boundary between the contiguous estates of the plaintiffs and the defendant. The record does show that there was a fence a distance of approximately 333 feet running from the front toward the rear between the two properties, and that there had been a road beginning where the fence ended and running back between the two properties through the open cultivated land to where the wooded area began. It is clear, however, from the testimony that *520 the fence and road as it existed prior to 1933 had not been consented to as the boundary line, between the two properties, nor had either apparently been located as a result of any survey. In 1933 the defendant’s author in title, Foret, employed R. P. Rordam, a licensed surveyor, to establish a boundary line between the two properties. It is clear from the testimony that the Rordam survey was not one made in accordance with the Article 833 et seq. of the LSA-Civil Code, for it is shown that one stake was located on the road where the common boundary line began and 150 feet to the rear an iron stake was found, and Rordam stated that Foret only wished him to extend or continue this line to the end of the 40 arpents in the rear. Rordam did this without observing any of the formalities necessary for a binding legal survey. As a result of this survey, the fence and the road were changed in order to conform thereto.
The above facts show beyond a doubt that there was no visible boundary prior to 1933 other than a short fence which appeared to have been used by property owners as a part of a yard fence, and there is nothing to show that this yard fence or the road as it ran prior to the survey were the result of a previous survey or that either was recognized by the parties as a common boundary between the properties. The change in location of the fence and the road in 1933 is conclusive evidence that the defendant’s plea of 30 years cannot be sustained, and was correctly overruled by the District Judge.
As to the plea of 10 years prescription, it cannot be sustained upon the Rordam survey as it was not made in conformity with the articles of the code, neither can it be sustained on the ground of consent by the then owners and plaintiffs’ author in title, Rivet, for considering all the testimony, it shows no consent or acceptance of the survey by Rivet as a boundary between the two properties. While Rivet knew that the survey was being made, there is no acceptable evidence that he participated or joined in the survey in any way. As a matter of fact, there is positive evidence that he refused to pay any part of the cost and left soon after the survey was started. While there is strong testimony that Rivet objected to the line, it can safely be stated that, regarded in the most favorable light to the defendant, his action constituted no more than a “mere passive failure to object to the location” of the boundary line established by the Rordam survey.
The case of Blanchard v. Monrose, 12 La.App. 503, 125 So. 891, 893, decided by the Orleans Court of Appeal, is decisive of the facts herein. That Court stated:
“It, therefore, appears to us that the prescription of 10 years, as provided in [LSA-]C.C. art. 853, is not applicable unless the boundary has been fixed by a surveyor and an error has been committed, or unless the boundary has been fixed by the consent of the parties or by their active acquiescence with a realization of the fact that they were actually consenting to a boundary and acquiescing in the location thereof, and that the mere passive failure to .object to the location of a fence cannot form the basis of a plea of prescription of ten years.”
The Lower Court was therefore correct in overruling the plea of ten years prescription.
The plaintiffs have proven by a preponderance of the testimony the necessity for and right to a survey in accordance with Article 823. The defendant objects to the acceptance of the survey made under order of the Court on five grounds. The first objection is that the plan of survey is not signed by Lovell, the surveyor. Counsel for defendant states, in which he is correct, that the surveyor’s name, “J. A. Lovell, C. E.” is, however, printed on the plan with pen and ink, presumably by him. Lovell testified, without any objection, that he made the plan, identified it, and it was filed in evidence without any *521 objection. Defendant should have raised any objection that he had to the plan or Lovell’s testimony on the trial of the case.
The second objection made to the plan of survey is that it does not “fix the limits” of the tracts of land owned by the plaintiffs and defendant. It fixed the only limit which is in dispute, that is, the .boundary line between the two estates, and is therefore sufficient in this respect.
‘The third objection to the survey is that it does not include the entirety of the Buckhorn Plantation as subdivided, nor does the survey include the subdivision of the plantation as made by Simon Abraham and it is contended, therefore, that without this having been done it is impossible to fix the limits and determine the boundary between the properties of plaintiffs and defendant. There is no merit in this objection to the survey as the map shows the boundary lines of the Buckhorn Plantation, which was subdivided by Simon Abraham, and the surveyor testified that he started at the southwest corner of the old Buckhorn Plantation and by giving each owner the frontage called for in his title he located the corner common to the plaintiffs and defendant. From this point and in accordance with the field notes and the titles he proceeded to survey the common boundary, thereby fixing the northern boundary line ■ of the defendant’s property and the southern boundary line of the plaintiffs’ property.
The fourth objection is made to the fact that Lovell commenced his survey at a point shown to him by a neighbor, Willie Pierce, who owned a tract of land adjoining the property of defendant on the south. Defendant relied upon the case of Greer v. Sumney, 41 So.2d 526, decided by this Court. The Greer case is not controlling as there is a vast difference in the facts. In the present case it is true that Lovell, the surveyor, started at a comer shown him by Pierce, but the testimony shows that the correctness of this corner was checked by establishing the other three corners of the old Buckhorn Plantation and that the northwest comer was correctly located, and the common corner between Pierce and the defendant as located by the surveyor must have been correct for there is no objection voiced to it in the record. In fact, there is no objection to the location of the common corner between the plaintiffs and the defendant and it, therefore, must be correct; From these facts, this surveyor, proved the correctness of the 'corner which was pointed out to him by ' Pierce and it is the same as if he had located the corner without any assistance from- Pierce.
The fifth and last objection to the survey is that the surveyor’s description of the properties goes beyond the titles of the parties and refers to the depths of the properties as being “between proportionate lines of the whole tract of which it forms a part.” This is exactly what this whole suit is based Upon. The defendant objected to his north and south line “converging or closing in”, so to speak. This has been discussed heretofore and the surveyor has only described the course- of the north and south boundary lines' of each ‘owner’s tract of land as they'are actually • shown to exist according -tb a review- of the authors in title of both parties to this suit. If an attempt was made to give the various owners of the Buckhorn Plantation Subdivision an equal footage in the front and rear, according to thé map -half or more would get no footage in the .rear for the property is clearly wider on the front than it is in the rear, and in order to fairly subdivide the property with an expectation of selling the lots or tracts of land, Simon Abraham evidently saw to it that for so much frontage a purchaser would obtain a proportionate amount of footage on the rear. Had he subdivided the land in the manner or method which the defendant would like, then some of the purchasers would have no rear footage at all. ■ :
For the reasons given, the judgment of the District Court is affirmed.