AYRES, Judge.
This is an action in boundary. Plaintiff is the owner of 30.75 acres situated in the SWJ4 of SEJ4, Section 14, Township 22 North Range 15 West, Caddo Parish, Louisiana. Defendants are the owners of the adjacent lands in the SE14 of SWJ4 of said section. Therefore, plaintiff’s property is bounded on the west by the properties of defendants. This action is brought pursuant to the provisions of LSA-C.C. arts. 823 and 824, providing that where two contiguous estates or tracts of land have never been separated or have never had their boundaries determined, or if the boundaries which have been formerly fixed are no longer visible, each of the owners of said contiguous estates has a right to compel the other to fix the limits of their respective properties. As no one is bound to hold an estate in common, no one is bound to leave undecided the boundary lines which separate his estate from that of his neighbor.
Defendants answered plaintiff’s petition setting forth that the boundary between their lands and plaintiff’s has been established by common consent and a fence dividing said properties was constructed thereon which has been recognized and acquiesced in for more than 30 years and that accordingly where plaintiff and defendants and their authors in title have occupied and possessed their respective properties to the fence line and recognizing it as the boundary line between their properties for more than 30 years, such boundary has been established and a survey was unnecessary and in support of which defendants plead the prescription of 30 years as provided by LSA-C.C. art. 852.
From the judgment approving and ho-mologating the survey as made by the surveyor appointed by the court and fixing the boundary line in accordance therewith coincidental with the north and south center line of the aforesaid-section and condemning the defendants to pay all costs, including a fee of $850 for the surveyor, which was attacked as excessive, exorbitant and unreasonable, and a fee of George E. Dutton, surveyor, as an expert witness in the sum of $50, as a useless and unnecessary item of expense, and a fee of Henry L. Bango, consulting forester, as a witness in the sum of $15, as erroneous as his testimony was inadmissible as not in rebuttal or for the purpose for which the case had been left open, defendants appealed.
The aforesaid fence line, as contended for by the defendants, is located east of the ideal boundary 89.5 feet at the north end and 113 feet at the south end. This disputed area, approximately 900 feet long and comprising slightly more than two acres, lies within the descriptive title of plaintiff and his authors. Thus, defendants are claiming beyond their title in diminution of plaintiff’s title. However, where there is a visible boundary recognized and acquiesced in as such for 30 years or more, to which defendants and their predecessors in title have, in addition to the land described in their title, actually possessed, a plea of prescription of 30 years interposed by the defendants will be sustained in an action of boundary. LSA-C.C. art. 852; Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Henly v. Kask, La.App., 11 So.2d 230.
*549 Plaintiff and defendants claim recorded titles emanating from a common author. This property was acquired by George W. Hale in 1860 by patent from the United States Government, and after his death his widow and heirs conveyed it to Jacob R. Hale by deed of October 30, 1894. On January 30, 1903, Jacob R. Hale conveyed to James M. Hawkins the 40 acre tract embracing defendants’ property. Defendant, Mrs. Agnes Hawkins Hemperley, is the daughter of James M. Hawkins, from whom she acquired her property by inheritance and by partition among herself, his widow and the other heirs. Mrs. Ada M. Hawkins Stanberry was also the daughter of James M. Hawkins and in like manner acquired an interest in her father’s estate, which she sold to the defendant, Don C. Hemper-ley, in 1952. Plaintiff acquired his tract in 1940 from A. H. Stanberry, Jr., whose acquisition is dated about 1925.
The evidence discloses that in 1904, following his purchase in 1903 of the property wherein is located defendants’ property, James M. Hawkins erected a fence between his tract and the property of Jacob R. Hale, his brother-in-law, from whom he had acquired his property. H. B. Hawkins, a son of James M. Hawkins, 20 years old at the time and 69 years of age at the time of the trial, testified that he assisted his father in January or February of 1904 in erecting the fence on the boundary line between the two tracts as was fixed by J. M. Hale, a surveyor, who was a brother of Jacob R. Hale. The said Jacob R. Hale was then the owner of plaintiff’s property. Although the fence as erected served as a barrier against hogs and cattle, as there was no effective stock law at the time, yet we are impressed with the testimony that the fence was placed in its precise location for the purpose of serving as a marker or monument of the boundary between the Hawkins and Hale properties; otherwise, the survey would have served no purpose. This fence was constructed of net wire commonly referred to as “hog wire”, with two or three strands of barbed wire above. Hawkins was most positive that it was constructed on the line as surveyed by Hale and was placed there as a boundary line fence between said properties. Moreover, he testified that Piale lived with the Hawkins family and knew of the construction and location of the fence in question.
Allen H. Stanberry, plaintiff’s author in title, who purchased that property in 1925 and occupied it until sold to plaintiff in 1940, acknowledged the existence and location of the fence when he acquired said property when the property was sold to plaintiff. He considered the fence as the boundary between his and defendants’ property and during his occupancy and ownership recognized it as such, which covered a period of 15 years.
Mrs. Marie Hale McCarley, daughter of J. M. Hale, the surveyor, knew of the existence of the fence between said properties for many years.
Mrs. Viola Hoss Holmes, who lived at Hosston near this property for 40 years, during which time she was familiar with the property and knew there was a fence dividing the properties when the Stanberry family lived there, whom she visited on occasions.
Mrs. Verdie Clarice Hale, also a resident of Hosston since 1915, during which time she was also familiar with defendants’ and plaintiff’s properties from having visited with the families, had knowledge of the existence of the fence, which she says did not extend “right to the ditch”, meaning the highway ditch, but extended to the right of way of the road. She testified that she was familiar with this fence for perhaps longer than 35 years.
The testimony of T. M. Hemperley, husband of defendant, Mrs. Agnes Flaw-kins Hemperley, with whom he has lived on defendant’s property since 1937, when the built their home, prior to which they lived only a half a mile to the east, discloses that when he came to Louisiana in 1923 the fence in question was in existence and that it ran south to the road, where it connected with a fence running in a westerly direction along the north side of the highway. The fence was repaired from *550 time to time, and that, instead of plaintiff building a fence as contended by him, Hemperley was emphatic that plaintiff merely repaired the pre-existing fence.
John C. Stanberry, a resident of Hoss-ton, testified that he was acquainted with and knew the location of the properties of plaintiff and defendants and had been so acquainted with that property since 1906 and had lived across the road just east of the Sessum property for many years, beginning in 1926. His residence was about a half mile from the disputed property. This witness testified:
“A. * * * We moved there in 1906 and the fence was built on around the whole 40 acres when we moved there. Of course I was a bird hunter, the reason I know where the fences was.
“Q. That’s the fence between the Sessums property and the Hemperley property? A. Yes, sir.
“Q. That fence runs north and south? A. Yes, sir.
“Q. Did it run down to the road? A. Yes, sir.
“Q. Was there a fence around the road? A. The fence was around the road on that Hemperley side.
“Q. That’s the north side ? A. Yes, sir.
“Q. And the Hemperley 40 acres, was that entirely enclosed with a fence? A. The whole forty was enclosed, and it is still enclosed now, because there is two pastures back in there. And the old fence is there.
“Q. In other words, there was a fence along the north line of this, running east and west? (Indicating) A. Yes, sir.
“Q. There are evidences of that fence still standing, aren’t there? A. Yes, sir. It can be seen. Anyone can see it.
“Q. Anybody that goes along there can see it? A. Yes, sir.”
From the foregoing the conclusion is irresistible that James M. Hawkins and his son, J. B. Hawkins, erected in 1904 the fence on a line and at a location as surveyed by J. M. Hale as the boundary between the present properties of plaintiff and defendants. This fence was in existence from the date of its construction until the trial of this suit in 1953, or for a period of time considerably exceeding 30 years. The fence was generally considered in the vicinity as a boundary fence. While it was erected as a barrier to roaming livestock, its location was determined by a survey of a line between said properties. It was constructed as a boundary fence, recognized and maintained as such for more than 30 years. The owners of the property adjacent to said line and/or their predecessors m title and in possession, possessed as own-ners the lands to said fence.
The plats of the surveys made by Dutton in 1952 and by Wilkerson, as the court appointed surveyor, show the existence and location of this fence, which, in a measure, corroborate defendants’ position. As we view the matter, in the light of the positive evidence as to the year in which the fence was constructed, the physical fact of the fence wire being grown and embedded in trees at a much later date is a matter of little consequence and loses much of its weight and fails to carry the convincing and persuasive force contended by plaintiff.
For instance, it would well be that where a fence is not completely maintained and kept in repair, as contended here, after the construction of the fence, the fence “row” was permitted to “grow up”, which growth in time would take on the size of small trees to which, in the repair of the fence in later years, its wires may have been nailed or stapled. The age of the trees would serve as no indication of the age of the fence. In the absence of proof that the fence, when originally constructed, was attached to the trees, the positive testimony of those who *551 assisted in its erection and construction and of other eyewitnesses has not been disproved or overcome.
We are, therefore, of the opinion that defendants have sufficiently and adequately borne their burden of proof in establishing the facts necessary to support their plea of prescription which rested upon them, Sattler v. Pellichino, La.App., 71 So.2d 689; Hester v. Smith, La.App., 72 So.2d 549, and that the fence, or other visible bounds or markings, was erected and maintained as the result of the mutual consent of the original and subsequent owners that such would serve as the marking of the boundary between their properties, and that accordingly said plea should be sustained. Arabie v. Terrebonne, La.App., 69 So.2d 516; Jones v. Dyer, La.App., 71 So.2d 648; Hester v. Smith, supra.
 Since Opdenwyer v. Brown, 155 La. 617, 99 So. 482, the jurisprudence has been uniform in actions of boundary that to the possession of a present owner may be added the possession of his predecessors in order to make up the requisite period of 30 years. Therefore, it appears clear to us as the result of this jurisprudence that the well established rule is that where there is a visible, recognized boundary which has been in existence for 30 years or more and the defendant in a boundary action and his predecessors in title have, in addition to the property described in their title, actually possessed land extending to that visible boundary, a plea of prescription of 30 years will be sustained inasmuch as the defendant may show that while he has not himself occupied the property for 30 years, the possession or occupancy of his predecessors in title may be added or “tacked” to that of his own in order to make up the requisite period of time. Opdenwyer v. Brown, supra; Tate v. Cutrer, La.App., 53 So.2d 285.
Plaintiff insists that the visible bounds must be maintained during the prescriptive period of 30 years. As stated, such, in our opinion, has been established. Hill v. Richey, 221 La. 402, 59 So.2d 434. Accordingly, the visible boundary as contended by the defendants should be recognized as the boundary between plaintiff’s and defendants’ properties.
The matter of the taxing of costs has been given particular consideration. While we have reached the conclusion that plaintiff has failed in his demand to have established as the boundary line between his and defendants’ properties a line coincidental with the north and south center line of the aforesaid section 14 as was prayed for by him, it would have to be conceded there existed a bona fide dispute as to the location of such boundary and a judicial determination of the boundary has been the only possible means for a final settlement of the dispute. Accordingly, we feel that the provisions of LSA-C.C. art. 663, providing that limits will be established and boundaries fixed at the joint expense of the proprietors of contiguous estates, should be applied. Therefore, our decree will provide for a division of such costs on the basis of one-half to plaintiff and one-half to defendants. However, since plaintiff was not successful on the appeal, the costs of appeal should be borne by him. Sharpless v. Adkins, La.App., 22 So.2d 692; Broussard v. Winn, La.App., 41 So.2d 486.
Defendants, however, earnestly protest as unreasonable, excessive and exorbitant the fees of the surveyors and expert witnesses aggregating $915 in connection with this action wherein slightly more than two rural acres are involved. While the value of the property to be surveyed or the value of land in dispute in a boundary action can not be a criterion or a determining factor in fixing such fees, yet such fees are a matter of judicial concern, the fixing of which is largely within the discretion of the court, subject to review on appeal. From the record as made up we are unable to determine the issues presented in connection with these fees inasmuch as the evidence taken on the trial of a rule to fix and tax such fees as costs is not contained in the record. It does appear, however, from the record that probably the surveyor charged for considerably more work than was necessary to be done in carrying *552 out the orders of the court. Defendants contend that evidence was introduced on the trial of the aforesaid rule to the effect that although a per diem charge of $75 for a surveyor and two helpers was reasonable, two days would have been all the time necessary to make the survey as was undertaken in this case. In the absence from the record of the testimony bearing on the question of fees and in view of the fact that the surveyor is a party of primary interest and concern in the fixing of his fees and that he is apparently unrepresented, we have determined to order a new trial on the aforesaid rule and to remand the case for that purpose.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside and it is now ordered, adjudged and decreed that defendants’ plea of 30 years’ prescription be and the same is hereby sustained and, accordingly, the boundary between the estates of William R. Sessum, on the one hand, and of Don C. Hemper-ley and Mrs. Agnes Hawkins Hemperley, on the other, be and it is hereby fixed and established as along the fence line now existing between said estates and as was established and marked by the erection of said fence in 1904 and beginning at a point 89.5 feet east of the northwest corner of the SW14 of SEj4, Section 14, Township 22 North Range 15 West, Louisiana Meridian, Caddo Parish, Louisiana, and extending and running in a southerly direction to a point on the north boundary of the road traversing said land 113 feet east of the west boundary of the said SWJ4 of SE}4.
It is further ordered, adjudged and decreed that the costs of this proceeding, including the fees of the aforesaid experts, be paid jointly by plaintiff and defendants in the proportion of one-half to plaintiff and one-half to defendants, except the costs of appeal, which are taxed against the plaintiff-appellee.
It is further ordered, adjudged and decreed that the judgment on the rule to fix and tax as costs the fees of said experts be and the same is hereby avoided, annulled and set aside and that a new trial is granted, and, for that purpose, the case is remanded to the First Judicial District Court in and for Caddo Parish, Louisiana, for such new trial, in accordance with law and consistent with the views herein expressed.
Judgment reversed and rendered in favor of defendants and remanded for a new trial on the rule to fix and tax as costs the fees of the experts.
Reversed and rendered.
HARDY, J., dissents.